JOHN J. GHINGHER, RECEIVER, *v.* DANIEL E. BACHTELL, ET AL.
[No. 61, October Term, 1935.]

*Decided January 22nd, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William H. Bovey*, with whom was *Elias B. Hartle* on the brief, for the appellant.

*John Wagaman* and *Charles F. Wagaman*, with whom was *D. Angle Wolfinger* on the brief, for the appellees.

*Joseph C. France, Alexander Armstrong*, and *J. Purdon Wright*, counsel for John D. Hospelhorn, Receiver of the Baltimore Trust Company, filed a brief as *amici curiae*.

MITCHELL, J., delivered the opinion of the Court.

On the 5th day of May, 1933, John J. Ghingher, then bank commissioner of the State of Maryland, was appointed receiver of the People's Banking Company of Smithsburg, hereinafter called the bank, by the Circuit Court for Washington County, Maryland, and assumed charge of the affairs of the bank in accordance with the provisions of section 9 of article 11 of the Code of Maryland, as supplemented by chapter 46 of the Acts of 1933, commonly known as the Emergency Banking Act, which latter act took effect on March 4th, 1933.

On June 19th, 1933, a petition was filed by the receiver, which, in substance, set forth that the bank was originally incorporated on January 24th, 1910, under the provisions of article 11, with a capital stock of $20,000, divided into 2,000 shares of the par value of $10 each, and that on January 13th, 1922, the original articles of incorporation of said institution were amended, whereby the capital stock was increased to the sum of $40,000, divided into 4,000 shares of like par value, all of which stock was outstanding at the time of the filing of the petition.

It was further alleged in the petition that, in the course of the liquidation of the affairs of the defendant bank, the commissioner had ascertained, with absolute

certainty, the existence of a deficiency between its assets and liabilities, far in excess of $40,000, representing the approximate par value of the authorized and outstanding capital stock of the institution; and accordingly it was prayed that an order be passed determining and adjudging that each stockholder of the bank be required to pay to the receiver a sum equal to the par value of the stock held by him, and, finally, that the petitioner be authorized and directed to collect, and enforce payment thereof, against the stockholders through appropriate legal proceedings.

On the date the petition was filed, the court passed a summary order decreeing that each stockholder of the bank be required to pay to the receiver an amount equal to the par value of the share or shares of the capital stock of the institution held by him, and authorized and empowered the receiver to collect and enforce payment of the stock liability.

On February 15th, 1935, a petition was filed in the receivership proceedings, by Daniel E. Bachtell and others, in which it was set forth that the petitioners had been made defendants in a separate suit filed in said court by the receiver on January 28th, 1935, for the purpose of recovering the statutory liability upon stock held by them in said bank. The petitioners alleged that they had only recently acquired knowledge of the summary order passed against them; that they were advised that said order precluded them, and each of them, from making their respective defense on the merits, and thereby precluded any denial of the need for, or liability of the petitioners upon, the assessment made in the order; and, after setting forth that, not having been made parties to the suit at the time of the passage of the order, they were taken by surprise, through the attempted enforcement against them, they further alleged as follows:

"That your petitioners are informed, believe and therefore allege that the various debts and liabilities of said The Peoples Banking Company of Smithsburg, Maryland, for the payment of which recovery is sought in the afore-

mentioned equity cause, accrued against said bank at various times over a period of years, and that all of said debts and liabilities did not accrue during the time that all of your petitioners were alleged holders of the stock of said banking company.

"That said order was passed without any allegation or proof that your petitioners held stock in said The Peoples Banking Company of Smithsburg, Maryland, at the time or times when the various debts and liabilities of said banking company accrued against it.

"That said order was passed without any allegation or proof that the various debts and liabilities of said bank accrued during such time or times as your petitioners were alleged holders of stock of said banking company.

"That your petitioners are informed, believe and therefore allege that even though they should be held liable to an assessment for any payment of double liability upon the shares of stock alleged to be held by them, that your said petitioners are, if liable at all, which they do not admit, liable only, under the provisions of the banking laws of Maryland, for such debts and liabilities of said bank as accrued during the respective periods during which they may be proved to have held stock therein.

"That the aforesaid order renders your petitioners liable as of course as alleged stockholders of said banking company, and likewise renders them, if liable at all, which your petitioners do not admit, liable for larger sums of money than they, if liable, are required by law to pay.

"That the statutes of Maryland, under and by virtue of which said order of assessment was passed, impair the obligation of contracts, are discriminatory and deprive your petitioners of equal protection of the law, deprive your petitioners of property without due process of law, and otherwise contravene the provisions of the constitutions of Maryland and of the United States."

Finally, the petition prayed that the aforesaid order, passed on June 19th, 1933, be rescinded, and that, in event the prayer for rescission be not granted, the said order

be so modified as to permit defendant stockholders in said bank to offer any and all defenses which they, or any of them might have to the proceeding against them.

Upon the aforegoing petition, a *nisi* order was passed on February 16th, 1935, requiring the receiver to show cause why the petition should not be granted.

A second petition to intervene in the proceedings was filed by certain stockholders, alleging, on their part, payment of the assessments against them as stockholders as having been made through inadvertence and mistake and their intention to sue the receiver for the recovery of such payments. Said latter petitioners were, by order of the court, passed on February 16th, 1935, permitted to become parties to the suit.

On March 6th, 1935, the receiver filed his answer to the aforegoing petition of February 15th, 1935, in substance denying all the allegations of the petition.

For the purposes of the hearing, a stipulation was filed in the proceedings by counsel for the respective parties, as follows:

"That the times at which the various stockholders of the above named bank acquired their respective share or shares of its capital stock are correctly shown by the stock books of said company, which said stock books this honorable Court shall take and consider as having been duly offered in evidence and proved.

"That at the time of the closing of the aforesaid bank, the various stockholders who are petitioning this Court to strike out the assessment for double liability heretofore made against them, had on deposit in said bank the various sums of money shown on the lists and schedules of deposits herewith filed, which said deposits shall be taken as duly proved by competent evidence in this cause.

"That deposits which are now liabilities of said bank and were such at the time of its closing were made and its other liabilities incurred from time to time over a period of years, and that all of its said deposits were not made or its other liabilities incurred during the time

that all of its stockholders of record at the time of its closing were such.

"That some of the shares of stock of said bank have been held and owned continuously by the same petitioner or petitioners from before June 1st, 1910, to the present time."

Attached to and forming a part of the stipulation is found a list of stockholders who became such prior to June 1st, 1910, and a detailed statement of the respective amounts on deposit in said bank to the credit of the petitioning stockholders.

For the purposes of the hearing, it was admitted: "That without resort to the liabilities of stockholders the total assets of said bank will be insufficient to pay its liabilities to the extent of at least $40,000, and that unless recovery is made from stockholders of this bank, complete liquidation of its assets will leave more than $40,000 of its debts unsatisfied."

After a hearing, the chancellors, on July 31st, 1935, passed a decree rescinding the order of June 19th, 1933, whereby the receiver was authorized to enforce the liability of stockholders in said bank. The decree, however, was passed "without prejudice to such further proceedings as the receiver may be advised are proper, and in accordance with the opinion filed," which opinion, in substance, limits the respective liability of stockholders at the time of receivership to debts of the bank contracted during the period of such stock ownership. From that decree this appeal is taken.

The chief question presented for our determination, therefore, involves the point of time at which the double liability of a stockholder in a corporation engaged in banking becomes fixed with respect to such stockholder, to the extent that he may be compelled to contribute his statutory *pro rata* share towards a fund whence are to be paid, as far as possible, the debts of the corporation; the same being insolvent.

As a preliminary step in such inquiry, a brief retro-

spect, embracing the legislative and constitutional antecedents of the present law relating to this subject, may tend to assist in its elucidation.

Today, banks and trust companies in this state are governed by the same statutes. Earlier, the two classes of corporations were legislated upon under separate articles in the Code, one dealing with "Banks" and the other with "Corporations." Still earlier, so far as stockholders' liability is concerned, banks alone were subject to this protective provision for the benefit of creditors of such institutions. And farther yet in the past, upon the failure of a bank, its stockholders lost only what money they had actually invested, and could not be compelled to make up any deficiency that might develop in the final settlement of the bank's affairs.

Specifically, then, prior to the adoption of the Maryland Constitution of 1851, bank stockholders, in case of bank failure, were not liable to contribute to any one any part of the deficit represented by the bank's unpaid debts.

By the Constitution of 1851 (article 3, section 45), stockholders in new or rechartered banks were made liable, in the event of corporate insolvency, "to the amount of their respective share or shares of stock," in satisfaction of the bank's creditors.

The Constitution of 1864 (article 3, section 38) made no material change in this provision; none was made in the 1867 Constitution; and section 39 of article 3 now reads: "The General Assembly shall grant no charter for Banking purposes, nor renew any Banking Corporation now in existence, except upon the condition that the Stockholders shall be liable to the amount of their respective share or shares of stock in such Banking Institution, for all its debts and liabilities upon note, bill or otherwise; the books, papers and accounts of all Banks shall be open to inspection under such regulations as may be prescribed by law."

In 1868 the Legislature, by chapter 471, section 61 (now section 76, article 23, Code) clarified the status

of executors, trustees, and similar persons holding stock for others, as to the effect of any liability thereon.

In 1892, by chapter 109, the Legislature added new sections to the "Corporations" article of the Code, one of which, section 85L of article 23, imposed liability for corporate debts upon stockholders in safe deposit, trust, and loan companies. Certain other corporations were also included, but subsequently eliminated. Members of a partnership being potentially liable for partnership debts to the extent of all they possessed, if required, and stockholders in banks being doubly liable in case of corporate insolvency, the Legislature evidently deemed it not inequitable that some such provision should be made to cover the class of stockholders named; and, accordingly, imposing a less onerous burden than that borne by partners but heavier than that of bank stockholders, it first fixed the liability of stockholders in safe deposit, trust, and loan companies at double the value of the stock owned, which, together with the amount of investment in stock, in reality was "triple liability." Later, in 1904, by chapter 101, amending the Act of 1892, the liability of such investors was limited to an amount equal to the par value of the stock owned, thereby reducing the so-called "triple liability" to the present "double liability," the same as in the case of stockholders in banking corporations. And, under its provisions, the receiver of an insolvent corporation was clothed with authority to enforce the double liability of its stockholders. This enactment effected a change in the remedy of creditors, in that prior thereto the claims of creditors had been enforced by an individual suit against a stockholder. The new law made the receiver, representing the interests of the corporation, as well as all its creditors, the proper party to initiate proceedings against all the stockholders for the enforcement of their statutory liability.

This was the situation at the beginning of 1908; and in that year chapter 153 was enacted, making minor changes in the act of 1904. At the same session, the Legislature, by chapter 240, section 40, added new lan-

guage to the Act of 1868, declaring that, except in the case of banks, for which provision was made in the Constitution (section 39, article 3), and except as provided elsewhere in the "Corporations" article (e. g., section 147, relating to trust, etc., companies, and section 77, requiring stockholders to complete payments on stock subscriptions, in certain contingencies), no stockholder should be held liable for corporate debts. The effect of this act was to make clear that the Act of 1892 did not apply to banks, and to point to the Constitution as the source of bank stockholders' liability.

In 1910, by chapter 219, the Legislature revised the "Banks" article of the Code, repealed such of the provisions of the "Corporations" article as applied to trust companies, and, combining them with the bank provisions, changed the title of article 11 from "Banks" to "Banks and Trust Companies."

By virtue of this coalescence of statutes, the receiver of a bank, for the first time, was empowered to enforce the liability of its stockholders, collecting their contribution to the common fund, from which he would make distribution to the bank's creditors. In view of the inauguration of this new system of liability enforcement, involving a change in the theories of recovery and a corresponding modification of the rules of evidence, the cases which had been decided during the existence of the old practice were no longer controlling. True, the statutes construed in those cases, while then relating to corporations other than banks, have since become part of the banking laws. But the court was there considering an original legislative enactment, pure and simple, lacking any specific constitutional background, and was therefore bound to construe the same according to the principles of statutory construction.

The present law upon the subject of stockholders' liability being the same in the case of banks as in the case of trust companies, it might be argued that, the trust company law having been construed before it became a part of the bank law, the effect of combining the trust com-

pany law with, and making it a part of, the bank law should, under the doctrine of *stare decisis*, make mandatory the acceptance of prior judicial construction, in cases involving banks. But it must be recalled that the trust company law dates from 1892, its receivership feature dates from 1904, and it was merged with the banking law in 1910. The law of 1910, so far as it related to banks, was but an amplified restatement of the constitutional provision, detailing in a legislative act an axiom of the organic law of the State, which had existed for nearly sixty years before the Legislature placed it in the Code. Therefore the analogy falls, for the reason that we have before us, not a simple act of Legislature, and, as such, open to construction under the rules of statutory interpretation, but, in reality, a basic provision of the State Constitution, as amplified in administrative detail by a subsequent act of the lawmaking body of this state.

The question, then being one of constitutional and not statutory construction, and finding no case in which this section has been previously expounded, it is presented as one of first impression. Viewed in that aspect, the controlling force in its adjudication must be developed from an inquiry into the underlying purpose sought to be accomplished by its terms. One quickly concludes that purpose to be the protection of bank creditors. The debates of the Maryland Constitutional Convention of 1864, when this section (section 39, article 3) was under discussion with a view to amendment, are affirmatively illuminating upon this point.

The object being apparent, and a doubt arising as to the method of its accomplishment, the resolution of that doubt depends upon the answer to the inquiry: Of a number of possible interpretations, which is best calculated to insure the rights of creditors and at the same time operate the least harshly upon those who must bear the burden of liability?

In the case at bar, two courses lie open:

(a)   To hold liable all persons owning stock at the

time when it first becomes apparent that the bank's normal assets are insufficient to meet its obligations and the first step is taken to enforce stockholders' liability. (b) To hold liable those who owned stock at the times when the various transactions took place out of which arose the liabilities existing at the time of insolvency. Arguments advocating either course are fraught with possibilities of inequity, injustice, and hardship upon some one.

The theory of holding former stockholders liable arose as a matter of necessity, in order to prevent a failure of the remedy made mandatory by the Constitution. Originally, the enforcement of the double liability of bank stockholders presented some difficulty. The creditor was entitled to assert his claim, and the stockholder was bound to fulfill his obligation under the Constitution. This liability not being an asset of the bank in the sense that the bank itself could collect from him, it became apparent that the creditor must proceed directly against the individual stockholder. There was no actual contract, in the first instance, between stockholder and creditor; the contract being tangibly between the stockholder and the bank. Therefore, the creditor having a right of action and a source of liability from which his claim eventually was entitled to be satisfied, and the Constitution being silent as to the method of its enforcement, the law created the fiction of a contract between the creditor and the stockholder, for the purpose of enabling a suit, the result of which would be a fulfillment of the constitutional guaranty established for the protection of the public in its dealings with institutions chartered by the State to conduct a banking business.

The suit being brought upon this fictional contract, the trial thereof became subject to the rules of evidence in cases of contract; and, as a natural and logical consequence, the defendant could not be held liable for any claims against him which accrued at a time prior to his assuming the relation to the bank out of which arose the liability sought to be enforced. The courts felt bound to reject claims which did not arise during the period of

stockholdership of the defendant; and, from the numerous cases which were decided upon the basis of this principle, the doctrine of absolute nonliability of bank stockholders for debts occurring at a time when they did not occupy that relation to the bank came to be considered the settled law of this state in suits by creditors against individual stockholders.

It will be observed, however, that the Constitution does not fix the minimum liability to which stockholders in a banking institution, organized under the authority thereof, may be subjected; it does, though, fix the maximum liability of such stockholder, which, under its mandate, shall be "to the amount of their respective share or shares of stock in such banking institution, for all its debts and liabilities upon note, bill or otherwise." Nor does it limit the liability of stockholders to such debts as may have been incurred by the bank during the respective period of stock ownership. It creates a liability, as an incident to stock ownership in a banking corporation, for all its debts; and it is nowhere apparent that it was the intention of the framers of the Constitution to place upon creditors of an insolvent bank, or upon a receiver of its affairs, the insurmountable burden of proving, from day to day, and perhaps over a long period of years, the exact financial status of a banking corporation, as a condition precedent to the recovery of liability.

As we have observed, over a long period of years, the Legislature took no affirmative action upon the constitutional provision, and meanwhile courts were left to deal with that provision without statutory amplifications. But, since the Legislature of 1910, in the exercise of its inherent authority, enacted chapter 219, now found in the Code under section 72 of article 11, courts of this state must deal with the original constitutional provision in the light of the legislative enactment, and, whenever the latter is not in conflict with the former, their plain duty is to give full force and effect to the statute. That statute is explicit and mandatory. It provides: "Stockholders of every bank and trust company shall be

held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of every such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock. * * * And the liability of such stockholders shall be an asset of the corporation for the benefit ratably of all the depositors and creditors of any such corporation, if necessary, to pay the debts of such corporation."

Construing the quoted portion of the aforegoing statute, and giving to the words used therein the ordinary acceptation of their meaning, we must conclude that "stockholders" naturally mean those who are such at the time it becomes necessary to enforce liability. It cannot mean those who formerly held stock, because such persons ceased to be stockholders upon the assignment of their stock. Such a construction is not only reasonable, but it is fortified when applied in connection with section 71M of the Emergency Banking Act of 1933, which, apparently being predicated upon the theory that liability of the transferor ceased upon the ordinary *bona fide* transfer of bank stock, especially provided as follows: "Nothing contained in this Act shall be construed to relieve any stockholder of record in any banking institution at the time of the passage of this Act, from the liability imposed by Section 72 of this Article. Any person who may be a stockholder at the commencement of said period of custody and the subsequent transferee of record of said stock at the time the statutory liability for assessment shall become enforceable, shall be jointly and severally liable to the receiver for the statutory assessment on said shares. The rights of indemnity and exoneration as between a stockholder as of the date of the beginning of said custody and his transferee and between subsequent transferees during said period shall not be affected by this provision, but the liability of such transferor shall terminate whenever the custody of the Bank Commissioner shall cease by reason of the exemption of the banking institution whose stock is so trans-

ferred, from the provisions of this Act as hereinbefore provided in Section 71A, or upon the cessation of the Bank Commissioner's custody by the expiration of the time limited in said section, whichever shall first occur."

Again, it must be remembered that the statute provides that the stockholders' liability shall be an asset of the corporation for the benefit of all the creditors and depositors, if and when necessary to pay its debts. This language does not refer to persons who may have been creditors but are not now, but to those who are creditors now, and to all of them, regardless of when their rights accrued in relation to stock ownership.

One can readily visualize the vast detail of bookkeeping, the labyrinth of accounting, in which such proceedings might well become enmeshed, as a result of attempting to ascertain what were the precise liabilities of various stockholders over a period of years, involving a stupendous quantity of petty transactions and a review of many thousands of items found among the records of a bank, in an effort to determine the exact degree of liability of a particular defendant. Indeed, before the Act of 1910, Judge Boyd, in *Murphy v. Wheatley,* 102 Md. 501, 515, 63 A. 62, reluctantly adhering to the old theory, based upon the fiction of a contract between creditor and stockholder, commented upon the regrettable consequences necessarily flowing therefrom.

But, when the Act of 1910 merged the trust company law with the bank law and gave the bank receiver the power to enforce double liability against stockholders and make distribution to creditors, it swept away the fictional contract previously found necessary in order to achieve the object of the constitutional guaranty; and, the right of action no longer being one of the creditor in person against an individual stockholder but of the receiver against all the stockholders, a different theory of recovery was proper to be invoked.

In other words, the contract of the stockholder with the bank, not being a purely voluntary one, but being imposed upon him by the Constitution, was not to be

restricted to such a narrow interpretation as that required when the suit was a personal one between the creditor and the stockholder. Under the fictional contract, the stockholder could be strictly held to nothing beyond the pale of his actual period of possession of the stock. Under the absolute contract between the stockholder and the bank, springing from the constitutional provision, his liability was a broad one, and included the debts of the bank as and when they reached the stage of enforceable claims against the bank, regardless of the time when the particular transaction, out of which the claim arose, had its inception.

The logic runs thus: The Constitution says the stockholder shall be liable for the bank's liabilities; he shall be liable when the bank is liable; his liability is concurrent with that of the bank. He shall be called upon to pay, when the bank is called upon. If the bank is never called upon, then his potential liability dies. If it is called upon, by reason of a liability ripening into an active claim, then the quiescent liability of the stockholder is quickened into life, and his obligation to contribute becomes fixed and definite.

The statute, amplifying the Constitution, says such liability shall be an asset of the bank for the benefit of its creditors, if necessary to pay its debts. Therefore, until necessity demands, such liability remains in suspension, covering the entire body of stockholders, and, when invoked, it attaches to the stockholders; that is, those holding stock in the bank at the time of such invocation. The adoption of this interpretation is susceptible of least criticism from the standpoint of justice and equity, and is more nearly in accord with that certainty and simplicity which should accompany the administration of law. To hold the contrary view would engulf all concerned in a swirling flood of litigation, so lengthy, so tedious, and so costly that ultimately the inconclusive and discouraging nature of resort thereto would defeat the very end sought to be achieved by the basic law.

A further contention is made that, with respect to

stockholders who were such before the Act of 1910 took effect, their liability is still governed by the law as it stood before 1910, leaving them subject to suits by individual creditors for the enforcement of their claims, and that, so far as the Act of 1910 is attempted to be enforced in that respect, it is unconstitutional, in that it takes away a remedy previously enjoyed by such creditors. But, in the view we have taken, the liability of a stockholder does not become enforceable until the bank's inability to pay the creditors is manifest; and, as the record indicates that such a contingency did not arise in the present case until long after the passage of the Act of 1910, there can be no force in this argument. Furthermore, even had the Legislature not reserved existing rights, as it did in that act, it is well settled that no one has a vested right in a remedy, and that the Legislature may change a legal remedy, so long as the one substituted is equally effective in coercive force with the one repealed. *Balto. & O. R. Co. v. Maughlin,* 153 Md. 367, 138 A. 334.

In view of the broader field of contention between the respective parties to this suit, the question of the right of a depositor stockholder to set off his credit as a depositor of the bank against his liability as a stockholder of the bank was not pressed in the argument before this court. But, inasmuch as that question was referred to and dealt with in the carefully prepared opinion of the lower court, we deem it proper to dispose of it here.

In *Cahill v. Original Big Gun Assn.* 94 Md. 353, 50 A. 1044, 1045, it is said: "The liability of the stockholder, then, under the statute, having been settled as a debt due from the stockholder to the creditor, there can be no valid reason, it seems to us, why a stockholder who is also a creditor should not be entitled, as a matter of equity, to set up as an equitable defense the debt of the bank to him against his own liability. Mr. Cook, in his book on *Corporations* (section 225), says: 'It has been held that, where the statute creates a fund out of which the creditors are to be paid ratably, then the stockholder cannot set

off an indebtedness of the corporation to him. He must pay in what the statute requires, and then prove his claim against the corporation like any other creditor. But where the shareholder's liability by statute is immediate and personal and several, and any creditor may sue any shareholder, then the shareholder may set off a debt owing to him from the corporation, when he is sued by a corporate creditor.' In *Beach, Priv. Corp.* sec. 727, it is said: 'But if the statute imposes upon shareholders a personal liability to creditors, immediate and several, so that any creditor may institute an independent action against any shareholder for the enforcement of corporate debts, then a defendant shareholder may set off debts due from the company to himself.' In *Taylor, Priv. Corp.* sec. 732, it is thus stated: 'When a single creditor can and does sue a shareholder at law to enforce the statutory liability of the latter, it is then competent for the shareholder to set off a debt owing him from the corporation.' "

The case from which the above quotation is taken is cited in the opinion of the lower court in justification of its favorable ruling for the allowance of a depositor stockholder's set-off in the instant case. We cannot agree with that conclusion (a) because we are not here dealing with a corporation charter which, as in the cited case, specifically provided that "the continuance of this corporation shall be on the condition that the stockholders and directors of this corporation shall be liable to the amount of their respective share or shares of stock in this corporation for all its debts and liabilities upon note, bill or otherwise"; and (b) because that decision was rendered prior to the passage of the Act of 1910, definitely declaring the liability of all stockholders to be an asset of the corporation, for the use and benefit of all creditors alike.

In 1 *Poe, Pl.&Pr.* sec. 613, it is said: "A set-off, technically, means a cross claim, and is confined to mutual debts between the plaintiff and defendant. * * * To entitle the defendant to make such a defense, he must not only have a right to receive the amount due him from

the plaintiff but his claim must be of such a nature that he can sue for and recover it in a court of law. * * * And it may be stated, in general terms, that to authorize a set-off, the debts must be mutual, must be between the parties in their own rights, must be of the same kind and quality, and be certain and clearly ascertained or liquidated."

Applying the above fundamental principles to the facts in the instant case, we are unable to differentiate between stockholders who are depositors and stockholders who are not. The former class stand in the dual capacity of debtors and creditors of the involved corporation, and should be so dealt with in the liquidation of its affairs.

For the reasons stated, the decree below will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed, and cause remanded, with costs to the appellant.*