## STOCKHOLDERS OF THE PEOPLES BANKING CO. *v.* STERLING, RECEIVER.*

No. 298.   Argued January 6, 7, 1937.—Decided February 1, 1937.

---

* Together with No. 299, *Stockholders of the Hagerstown Bank & Trust Co.* v. *Sterling, Receiver.*  Appeal from the Court of Appeals of Maryland.

176

*Messrs. Charles F. Wagaman* and *John Wagaman,* with whom *Messrs. D. Angle Wolfinger, Martin V. B. Bostetter, C. Walter Baker,* and *Daniel W. Doub* were on the brief, for appellants.

*Mr. William H. Bovey,* with whom *Mr. Elias B. Hartle* was on the brief, for appellee in No. 298.

*Mr. Robert H. McCauley,* with whom *Mr. J. Lloyd Harshman* was on the brief, for appellee in No. 299.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Stockholders in banking corporations, charged with personal liability, contend that a statute of Maryland defining the form of liability and its measure offends against the Constitution of the United States by impairing the obligation of contracts previously made.

In No. 298, the liability in controversy is that of stockholders in the Peoples Banking Company of Smithsburg, which was incorporated under the laws of Maryland, January 24, 1910, and closed its doors June 29, 1931. The Bank Commissioner of the state, after being appointed receiver, filed a petition with a Circuit Court in Maryland for an order assessing the stockholders of record in an amount equal to 100% of the par value of their shares. An order was made accordingly in conformity with the provisions of Acts, 1910, Chapter 219 (Code of Maryland, Article II, § 72). Thereafter the appellants filed petitions for the revocation of the order, alleging the invalidity of the statute imposing liability, and alleging also that those of them who had paid the assessments before joining in the petitions had done so by mistake. At the date of liquidation appellants were the holders of over 2000 shares of stock. Thirteen appellants had become the holders of a relatively small portion of these shares (345) before the enactment of the applicable statute. Nearly all the appellants were depositors in the insolvent bank and were thus creditors as well as stockholders. The Circuit Court for Washington County, Maryland, granted the petitions, holding the statute void as an impairment of existing contracts. The Court of Appeals reversed, and adjudged the statute valid. *Ghingher* v. *Bachtell,* 169 Md. 678; 182 Atl. 558. The case is here upon appeal. Judicial Code, § 237; 28 U. S. C. § 344.

In No. 299, the liability in controversy is that of stockholders in the Hagerstown Bank and Trust Company, which was incorporated in 1902. The trust company was closed in February, 1933, and in January, 1935, an order was made for the assessment of all the stockholders to the extent of 100% of the par value of their shares, provided that no good cause was shown to the contrary within a stated time. The appellants in this case, unlike some of the appellants in No. 298, acquired

their shares after the enactment of the 1910 statute. Even so, they appeared within the time limit in opposition to the assessment, asserting that the statute was invalid as to them. The Circuit Court of Washintgon County sustained their opposition, and the Court of Appeals reversed. *Ghingher* v. *Kausler,* 169 Md. 696; 182 Atl. 566. In this case also the controversy is here upon appeal.

The questions in the two cases will be considered separately.

*First: The case of the Peoples Banking Company of Smithsburg.*

The Constitution of Maryland provides that "the General Assembly shall grant no charter for Banking purposes . . . except upon the condition that the Stockholders shall be liable to the amount of their respective share or shares of stock in such Banking Institution, for all its debts and liabilities upon note, bill or otherwise." Maryland Constitution, 1867, Article III, § 39. This provision was effective without more to impose a substantive liability upon stockholders in banks. *Ghingher* v. *Bachtell, supra,* pp. 688, 690. On the other hand, it did not take from the legislature the power to implement the liability with statutory remedies, nor in the absence of such statutes did it take that power from the courts. *Ghingher* v. *Bachtell, supra.* In January, 1910, when the Smithsburg bank was organized, the only applicable statute was Chapter 206 of the Acts of 1870. The Act shows by its title that it is one "to create State Banking Institutions to enable the several Banks in this State—State and National—to avail of the provisions thereof." It provides (§ 11) that "the continuance of the said several corporations shall be on the condition that the stockholders and directors of each of said corporations shall be liable to the amount of their respective share or shares of stock in such corporation, for all its debts and

liabilities upon note, bill or otherwise, and upon this further condition, that this Act and every part of it may be altered from time to time, or repealed by the Legislature.". The Maryland courts have held in a series of decisions that the liability thus recognized was not enforcible by the bank itself in the event of its insolvency, or by a liquidator or receiver suing in its behalf. *Ghingher* v. *Bachtell, supra; Miners Bank* v. *Snyder,* 100 Md. 57, 67; 59 Atl. 707; *Colton* v. *Mayer,* 90 Md. 711, 714; 45 Atl. 874. The right of action was no part of the assets of the insolvent corporation. The meaning of the statute was thought to be that every creditor of the corporation in assuming that relation acquired for his individual use, and not as a class representative, a supplemental right of action against the holders of the shares. To rationalize this right of action, it was said to rest upon an implied contract between the creditor on the one side and on the other the holders of the shares at the creation of the debt. *Ghingher* v. *Bachtell, supra.* Contract being the basis of the statutory remedy, the courts deduced the consequence that the liability did not extend to stockholders who became such after the debt was in existence. For the same reason any stockholder was free to reduce his liability by the use of set-offs or counterclaims available at the time of suit against the primary obligor. *Ghingher* v. *Bachtell, supra,* p. 694; *Cahill* v. *Original Big Gun Assn.,* 94 Md. 353; 50 Atl. 1044.

In June, 1910, less than five months after the incorporation of this bank, a statute was enacted, abrogating the remedy under the then existing statute and substituting another. Acts of 1910, c. 219; Maryland Code, Article II, § 72 "Stockholders of every bank and trust company shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of every such corporation, to the extent of the amount of their stock therein, at the par

value thereof, in addition to the amount invested in such stock . . . and the liability of such stockholders shall be an asset of the corporation for the benefit ratably of all the depositors and creditors of any such corporation, if necessary to pay the debts of such corporation, and shall be enforceable only by appropriate proceedings by a receiver, assignee or trustee of such corporation acting under the orders of a court of competent jurisdiction." A like remedy had previously been created against stockholders in trust companies. Acts of 1904, c. 101; Acts of 1908, c. 153. Through these amendatory acts, the cause of action formerly enforcible by the creditors separately, each suing for himself, became enforcible by the receiver as the representative of all. As a consequence of the new procedure, the assessment was to be laid upon all the holders of shares at the time of liquidation without reference to their relation to the bank at the creation of the debts, though stockholders dropping out sooner might escape a liability which under the earlier law would have clung to them indefinitely. Moreover, offsets and counterclaims were no longer to be available to reduce the several assessments and thus establish inequality. Stockholders when sued by the receiver would contribute to the fund ratably, and then prove their claims against the bank in the same way as other creditors. Such in outline is the effect of the statutory changes as the highest court of Maryland has defined them in this very case.

Do changes of that order impair the obligation of a contract between the corporation and the stockholders in contravention of the provisions of the Constitution of the United States?

The answer must be "no," and this for two reasons, first, because the changes are directed to the implementing remedies rather than the substantive liability, and second, because a change of substantive liability was

made permissible by the reservation of a power of alteration or repeal.

(1) The obligation laid upon the shareholders by the Maryland Constitution, though susceptible of legislative and judicial regulation in respect of the mode of its enforcement, was a substantive liability to which every stockholder subjected himself upon the acquisition of his stock. The legislature did not exhaust the measure of that constitutional liability by the creation of a particular remedial device. The remedy adopted was interpreted judicially as having in view a suit by a creditor against the particular group of stockholders who had undertaken by implication to answer for his debt. This does not mean that a different form of remedy, for example a suit by a receiver, would have been a departure from the Constitution, if the statute had prescribed that method of enforcement. The broad but indefinite words of the constitutional command gave permission to the legislature to establish any remedies reasonably appropriate to the general end in view. Cf. *Whitman* v. *Oxford National Bank,* 176 U. S. 559, 562; *Bernheimer* v. *Converse,* 206 U. S. 516, 529. So, the broad but indefinite words of the legislation first adopted, the Act of 1870, gave freedom to the courts to develop through the process of construction a cause of action enforcible at the instance of a creditor without asserting in so doing that a different cause of action, enforcible through a receiver, would have been an inappropriate implement of the constitutional liability, in the event that the legislature or the courts had chosen to adopt it. Stockholders who became such while the first statute was in force were chargeable with notice that a new remedy might be adopted if the one first chosen was inadequate. They would have been chargeable with such notice though nothing had been said. They were chargeable, as it happens, by the wording of the statute, the charter being

182

granted upon the condition that the Act or any part of it might be altered or repealed.

The remedy first established was found to be unworkable. *Ghingher* v. *Bachtell, supra,* at p. 692; *Murphy* v. *Wheatley,* 102 Md. 501, 515; 63 Atl. 62. Still acting within the limits of the constitutional command, the legislature of Maryland announced another remedy, less unwieldy and confusing. In the view of the state court, the substantive liability as the Constitution had created it was the same under the new procedure as it had been from the beginning. *Ghingher* v. *Bachtell, supra.* The court was far from holding that the statute had enlarged it. What had happened was merely this, that another remedy had been established to implement a liability created long ago. Cf. *Pittsburgh Steel Co.* v. *Baltimore Equitable Society,* 226 U. S. 455; *Hill* v. *Merchants' Mutual Ins. Co.,* 134 U. S. 515; *Fourth National Bank* v. *Francklyn,* 120 U. S. 747; 755; *Shriver* v. *Woodbine Savings Bank,* 285 U. S. 467, 474, 479. We cannot see in this an attempt to lay upon the stockholders by force of later legislation a new and different burden from that accepted at the outset. Nor would it help the appellants anything to assume in their behalf that the Constitution of the State has been given a new meaning, if the new meaning is not due to the compulsion of a statute. Change by judicial construction of antecedent legislation does not impair a contract, at least in the forbidden sense, if it be granted *arguendo* that such a change can be discovered. *Tidal Oil Co.* v. *Flanagan,* 263 U. S. 444, 450; *Fleming* v. *Fleming,* 264 U. S. 29, 31; *Brinkerhoff-Faris Co.* v. *Hill,* 281 U. S. 673, 680; *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358, 364. The new meaning, if there is any, is not ascribed to the Constitution because a later statute has said it must be done. The new meaning is the product of the independent judg-

ment of a court. So the state court has told us, and the good faith of its declaration is not successfully impeached. *Broad River Power Co.* v. *South Carolina,* 281 U. S. 537, 540. To changes thus wrought the Constitution of the United States does not offer an impediment.

(2) The result would not be different if the effect of the statutory amendments were to be viewed as an enlargement of the substantive liability for debts afterwards contracted, the enlargement being applicable to stockholders without exception, present as well as future. The charter was accepted subject to the condition that the personal liability then prescribed by statute should be subject thereafter to repeal or alteration. This court has held that when such a condition attaches to a charter, there is no unconstitutional change of the obligation of a contract by a subsequent enlargement of the liability of stockholders as to debts afterwards contracted, though the shares so affected were acquired before the change was made. *Sherman* v. *Smith,* 1 Black 587, affirming 21 N. Y. 9; *Looker* v. *Maynard,* 179 U. S. 46, 53; cf. *McGowan* v. *McDonald,* 111 Cal. 57, 66; 43 Pac. 418; *Perkins* v. *Coffin,* 84 Conn. 275, 295; 79 Atl. 1070; *Pate* v. *Bank of Newton,* 116 Miss. 666, 686; 77 So. 601. Stockholders who subscribe to stock subject to such a condition assume the risk that their relation to the corporation may be altered to their prejudice. Nor is their position any stronger because the new liability is heavier (if so it be assumed to be) than that imposed upon them directly by the Constitution of the State. The constitutional liability is not a maximum, but a minimum, and the legislature does not transcend the bounds of legislative power by increasing it thereafter. *Murphy* v. *Wheatley, supra,* pp. 514, 515, 516; *Davis* v. *Moore,* 130 Ark. 128, 135; 197 S. W. 295; *Parker* v. *Carolina Savings Bank,* 53 S. C. 583, 592; 31 S. E. 673; *Duke* v. *Force,* 120 Wash. 599, 606; 208 Pac. 67.

*Sherman* v. *Smith, supra,* left unanswered an inquiry (1 Black at p. 594) whether the amendment would have gone too far if it had been made applicable to debts existing at the date of its enactment as well as to existing stockholders. We may leave the question open now. Appellants have failed to show that any debts of the corporation to be enforced in these proceedings were debts existing on June 1, 1910, when the present statute became law, still less that the subtraction of those debts would have made the assessment lower than the par value of the shares. The extent of the deficiency is persuasive, in the absence of evidence to the contrary, that the assessment must have been the same if the old debts had been disregarded. Such of them as exist must have been contracted in the brief interval between January 24, 1910 and June 1 following. At all events, the burden was on the appellants to show themselves harmed through the operation of the statute challenged as unlawful. *Premier-Pabst Sales Co.* v. *Grosscup,* 298 U. S. 226, 227; *Hatch* v. *Reardon,* 204 U. S. 152, 160, 161. This they have not done. As to debts to be contracted afterwards, if not also as to others, the statute is impregnable.

What has been written is not at war with anything decided or even intimated in *Coombes* v. *Getz,* 285 U. S. 434, 441, 442, much relied on by appellants. There *creditors* were complaining of the destruction of a cause of action whereby they were left without a remedy. Here the record does not tell us that any creditors who were such when the first statute was repealed have claims still outstanding for debts contracted then. In the usual course of business deposits made so long ago must almost certainly have been paid through the application of the principle that the first drawings out are to be attributed to the first payments in. *Carson* v. *Federal Reserve Bank,* 254 N. Y. 218, 232; 172 N. E. 475. At

any rate, there is nothing to the contrary in the pages of this record. The fact is thus apparent that the contract rights of creditors are not involved at all. Whatever complaint is heard as to the substitution of a new remedy in 1910 is not from creditors of that date, unable to collect their debts. The complaint comes to us from stockholders, who took their stock with notice that the remedies against them might be changed from time to time.*

*Second: The case of the Hagerstown Bank and Trust Company.*

As already pointed out, all the complaining stockholders in this company acquired their shares after the adoption of the Act of 1910, with its new remedial devices. What has been said as to the stockholders in the Peoples Banking Company of Smithsburg applies with redoubled force to the stockholders in the trust company.

The decree in each case should be

*Affirmed.*

---

* "The authority of a state under the so-called reserved power is wide; but it is not unlimited. The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation and stockholders may be changed; but neither vested property rights nor the obligation of contracts *of third persons* may be destroyed or impaired." *Coombes* v. *Getz, supra,* pp. 441, 442.