HORSMAN DOLLS, INC., PLAINTIFF-RESPONDENT, v. UN-
EMPLOYMENT COMPENSATION COMMISSION OF NEW
JERSEY, DEFENDANT-APPELLANT.

Argued February 12, 1951—Reargued April 30 and ·May 7, 1951—
Decided June 25, 1951.

See also 134 *N. J. L.* 77, 45 *A. 2d* 681.

542

Messrs. *Herman D. Ringle* and *Morris M. Schnitzer* argued the cause for appellant. Messrs. *Theodore D. Parsons,* Attor-

ney-General, and *Joseph A. Murphy*, Assistant Deputy Attorney General, on the brief. *Mr. Charles A. Malloy*, attorney.

*Mr. Samuel Kaufman* argued the cause for respondent. *Messrs. Sanford Freedman* and *John M. Kaufman* on the brief. *Mr. Alexander Budson* and *Messrs. Bilder, Bilder & Kaufman*, attorneys.

*Messrs. Bernard M. Shanley* and *Harold H. Fisher*, for New Jersey State Chamber of Commerce, *Messrs. William J. Egan* and *Thomas L. Parsonnel*, for New Jersey Federation of Labor, and *Mr. William H. Osborne, Jr.*, for Crucible Steel Company of America, by leave of court, submitted briefs as *amici curiae*.

The opinion of the court was delivered by

HEHER, J. The subject of controversy here is the validity of the contribution rate assigned to the plaintiff employer for the year 1942 under *R. S.* 43:21–1, *et seq.*

The employers' rate of contribution to the fund created by this statute for the alleviation of economic insecurity due to involuntary unemployment, by the maintenance of purchasing power during periods of unemployment, is based on benefit experience. Benefits paid out of the fund on the subject employer's behalf constitute a basic factor in the computation of the rate. Under subsections 7 (c), (3) and (4) of the act, the employer either retains his basic rate of 2.7%, or is assigned a merit rate of 1.8% or 0.9%, or a penalty rate of 3.6%, depending on his employment experience. The excess of contributions by the employer over benefits paid, related to wages upon which contributions had been made during the experience period, determines the "reserve ratio" by which the merit rate is established. Where the employer's contributions for the test period are less than the benefits charged against his account, the rate is 3.6%; where the reserve ratio is less than 7.5%, the rate is 2.7%; where the reserve ratio equals or exceeds 7.5%

but is less than 10%, the rate is 1.8%; and where the reserve ratio equals or exceeds 10%, the rate is 0.9%.

The plaintiff employer's contribution rate for the years 1942 and 1943 was fixed by the defendant Commission at 3.6%. This was on the hypothesis that plaintiff's contributions during the experience period totalled $48,929.26, and the benefits paid amounted to $98,203.34. On this basis, the rate was properly fixed at 3.6%. · But plaintiff protested that its account had been illegally charged with benefits paid, and petitioned for a hearing and a recomputation. On April 1, 1948, after hearing held, the Commission resolved the issue adversely to plaintiff. The Appellate Division reversed the determination for what was deemed to be a failure of notice prescribed by subsection 6 (b) of the act. 9 *N. J. Super.* 101 (1950). The cause was certified here for appeal on the Commission's application.

The primary issue is whether there was a failure of decision and of notice directed by subsection 6($b$) of the act as it then was (*c.* 270 of the *Session Laws of* 1936, *R. S.* 1937, 43:21–6($b$)) which constituted an impairment of plaintiff's substantial rights and compels a disallowance of all benefits paid to plaintiff's former employees in computing the experience or merit rate under the statutory formula, even though it is conceded that all such benefit payments were valid and were made pursuant to the Commission's peremptory duty in. the fulfillment of the statutory public relief policy.

This was the procedure followed by the Commission during the period in question: The initial claim for benefits filed with the Commission by the employee detached from service was checked against all pertinent record data and information in the possession of the Commission; and when the examination revealed no grounds for disputing the validity of the claim, there was dispatched to the employer Form B-11, entitled "Notice to Employer of Claim for Benefits," advising the employer of the making of the claim for benefits and that the "Wage records on file in this office indicate that said worker is eligible for such benefits," and "If you have any

objections to payment of this claim, check the appropriate
item in the adjoining column and return original copy within
seven days from date" to the Commission at Trenton. The
column questions were designed to elicit all possible grounds
of ineligibility. And there was endorsed on the back of the
notice a printed statement that its purpose was to discover
"any facts that might disqualify the claimant or render him
ineligible." Such was the unvaried practice in the case of
the plaintiff employer. It is admitted that plaintiff received
such notices; and there is no contention that any of the
benefit payments in question were made without such prior
notice. There was no response to any of the notices so given
plaintiff, nor did plaintiff return any of the separation notices
prescribed by the Commission's regulations, which called for
an immediate statement by the employer of grounds for dis-
qualification, related to the separation from employment, for
the good and sufficient reason that the claimants were under
no disqualification. This was acknowledged by Garnier,
plaintiff's comptroller, who was in charge of all notices of
claims for benefits and all matters relating to employment
experience and the contribution rate chargeable to plaintiff.
He testified that he "really paid no attention" to the notices
B-11, because plaintiff's was "a seasonal business," the plant
was "shut down January, February and March, and some-
times April," and "we had no employment; there was no
objection I could make." The witness acknowledged that he
would have known if any of the claimants for benefits during
this period was disqualified, and that he was aware at the
time that many of the claimants, including his own son,
were receiving weekly benefits, indicating that their claims
for benefits had been allowed. It was then the Commission's
practice to send a notice of the deputy's disposition of the
claim for benefits only to employers who had responded to
the notice B-11 or had given a separation notice in accord-
ance with the Commission's regulations.

In June, 1942, plaintiff was given notice of its experience
rate for the then current year, the rate now in controversy;

and this was followed by the petition for a hearing. Shortly thereafter, plaintiff was given a breakdown of the benefit charges for the period in question, identifying its employee-recipients of benefits, and later on, November 1, 1943, plaintiff received a separate statement of each individual benefit claim for that period containing all the elements of an "initial determination" and the benefits paid on each claim. Except for a few isolated duplications corrected by the Commission itself, no proof was submitted or tendered by plaintiff tending to show that any of the claims were invalid and therefore not chargeable to its account. It is undenied that the claimants had a lawful right to the benefits allowed.

The contention is that the "decision" required by subsection 6(b) was not made with respect to the claims for benefits allowed and charged to plaintiff's account, and that plaintiff "was irretrievably prejudiced by the failure of the deputy to promptly notify it of the decision" made. It is said that this section laid upon the deputy the duty of an "initial determination" of "the validity of the claim, the commencement of the benefit period and its duration, and the weekly benefit amount," and that the failure of "timely notice" to the plaintiff employer of a "decision" definitive of these elements constituted a fatal deviation from the statute and a denial of due process of law in violation of the State Constitution and the Fourteenth Amendment to the Federal Constitution. It is argued on the brief that the statute requires that the initial determination be followed by weekly determinations during the compensation period of the claimant's right to continued benefits and his eligibility for work; and on the oral argument it was vigorously contended that unless the statute be construed to require weekly decisions and notice thereof to the employer, it would constitute in this regard a denial of due process.

As respects the "decision" to which the provision for notice has reference, and the significance of the phrase "other interested party," subsection 6(b) is not free from ambiguity. But we shall resolve the doubt in favor of notice. In this

view, the failure of notice to the plaintiff employer of the deputy's initial determination of the detached employee's eligibility for benefits did not result in substantial prejudice to plaintiff which demands that his account for rate purposes be disburdened of the benefits lawfully paid to the detached employee because of seasonal unemployment. The want of notice of the initial determination, however informal the decision, did not serve to deprive plaintiff of such remedy by appeal as the statute gave him, for plaintiff concedes that its failure to respond to the notices B-11 was the entire absence of grounds of disqualification. *Ergo*, there would not have been an appeal if notice of the determination had been given. As we have seen, there is no suggestion that any of the allowances for benefits here involved were unlawfully made, or were excessive in amount, or covered an undue period. There was no loss of a substantial right.

The disburdening of plaintiff's account of benefits thus lawfully paid would work serious detriment to the statutory policy of unemployment insurance without reparatory service to appellant. Administrative failures or deficiencies cannot be made to serve the interests of one whose substantial rights have not been thereby invaded. The statute does not say that, for the purpose of computing the employer's contribution rate, a failure of notice of the initial determination shall, in and of itself, work a disburdenment of the employer's account of the benefits lawfully paid; and the corollary is that the employer cannot invoke the omission save as may be needed to repair the injury done to him.[1] He may not resort

---

[1] The statute merely provides that unless an appeal be taken within five calendar days after delivery of notification of the decision to the claimant or other interested party, or within seven calendar days after such notification was mailed to his last-known address, the decision "shall be final and benefits shall be paid or denied in accordance therewith;" and that if an appeal tribunal affirmed a decision of a deputy, or the board of review affirmed a decision of an appeal tribunal, allowing benefits, such benefits "shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's account shall be charged with benefits so paid." The decision is not "final" if such notification is not given. *Pamph. L.* 1936, c. 270, *section* 6(b); *R. S.* 1937, 43:21–6(b).

to the default for his unjust enrichment. Here, there was notice to plaintiff of the claims for benefits and a demand that grounds of disqualification be made known. In the cited case of *Bell-Brook Dairies, Inc., v. Bryant,* 35 *Cal.* (*2d*) 404, 218 *Pac.* (*2d*) 1 (1950), there was no notice to the employer of the claims for benefits; and it was held that the failure of notice of the making of the claims "deprived plaintiff of the opportunity to defeat the claims by offering the claimants suitable employment," and "an opportunity to prevent the creation of the conditions giving rise to the tax or to show facts which might have established that the claimants were not entitled to benefits." But this is not so here. Plaintiff had notice of the claims, and failed to respond because of no known ground of disqualification.

██ But plaintiff says that the failure of prompt notice of the benefit allowances deprived it of the opportunity to provide employment and thereby to disqualify the claimants for benefits chargeable to its account, and to protect itself against disqualification arising subsequent to the initial award. The point is without substance. It conclusively appears that, because of the seasonal nature of the business, plaintiff could not provide employment during the benefit period. The layoff was an incident of the annually recurring season of unemployment then characteristic of the trade; and plaintiff well knew that its detached employees, with rare exceptions, would promptly receive benefits for the period prescribed by the law. Such is the purpose of employment security. And the notice of the initial determination would be of no avail in the discovery of after-occurring disqualifications. Recognition of this led to the contention on the oral argument that unless the statute be construed to require weekly determinations and notice to the employer, it would be violative of due process. The statute makes no such requirement; and its failure so to provide does not constitute a denial of the essence of procedural due process. Plaintiff was aware of the continuing benefit payments to its detached employees; and it knew disqualification by the provision of

unemployment or want of attachment to the labor market, or otherwise, would bear upon the merit rate.

Plaintiff had notice of the claim for benefits and an opportunity to be heard at the outset. If this be deemed *extra* the statute, and not of controlling force, it was open to plaintiff to challenge in the administrative tribunal the validity of the charges to its account, not only when it was first apprized of the contribution rate in July, 1942, but later on, in 1943, when the contribution rate was amended and there was a detailed revelation of the charges to its account for benefits paid and the findings made in the individual case. And there was a full judicial review by *certiorari*.

■■ Employment security is a branch of social insurance designed to serve the general welfare. Unemployment insurance makes provision against the loss of income incident to involuntary unemployment. A special fund established for the achievement of this objective is raised and maintained by an excise in the form of payroll and wage taxes. The purpose is to relieve the public generally of the economic burden of unemployment and place it on industry. 55 *Yale Law Journal* 1. The specific aim of the provisions of the New Jersey act for experience or merit rating is to encourage stable employment and to make a fair and equitable apportionment of the burden of the payroll excise. The whole is to promote the essential public interest rather than the particular interest of the employers. If the outstanding policy of the statute is to be served, compensation must be rendered promptly to workers whose income has ceased by reason of involuntary unemployment. The right to these benefit payments is not conditioned upon notice to the individual employer. The special interest of the employer is the measurement of the payroll excise by the benefits paid; and he cannot complain of the want of due process if he is afforded a full hearing at some stage of the proceedings on the question of the validity of the charges to his account for benefits paid. The requirements of due process are satisfied if, after appropriate notice, the person charged with the excise be

given an opportunity to be heard as to the validity and the amount of the levy at some point in the proceedings before the excise becomes irrevocably fixed. *Nickey v. Mississippi,* 292 *U. S.* 393, 54 *S. Ct.* 743, 78 *L. Ed.* 1323 (1934); *North Laramie Land Co. v. Hoffman,* 268 *U. S.* 276, 45 *S. Ct.* 491, 69 *L. Ed.* 953 (1924); *McGregor v. Hogan,* 263 *U. S.* 234, 44 *S. Ct.* 50, 68 *L. Ed.* 282 (1923); *Turner v. Wade,* 254 *U. S.* 64, 41 *S. Ct.* 27, 65 *L. Ed.* 134 (1920); *Security Trust & Safety Vault Co. v. Lexington,* 203 *U. S.* 323, 27 *S. Ct.* 87, 51 *L. Ed.* 204 (1906); *Gallup v. Schmidt,* 183 *U. S.* 300, 22 *S. Ct.* 162, 46 *L. Ed.* 207 (1902); *Pittsburgh C. C. & St. L. R. Co. v. Board of Public Works,* 172 *U. S.* 32, 19 *S. Ct.* 90, 43 *L. Ed.* 354 (1898); *Winona & St. Peter Land Co. v. Minnesota,* 159 *U. S.* 526, 16 *S. Ct.* 83, 40 *L. Ed.* 247 (1895). Notice and hearing are requisite where the determination of the amount of the levy involves the exercise of *quasi*-judicial power. *Turner v. Wade, supra; Hodge v. Muscatine County,* 196 *U. S.* 276, 25 *S. Ct.* 237, 49 *L. Ed.* 477 (1905). Due process of law is denied only where the proceeding is arbitrary, oppressive or unjust. *Glidden v. Harrington,* 189 *U. S.* 255, 23 *S. Ct.* 574, 47 *L. Ed.* 798 (1903).

██ Here, plaintiff was afforded an adequate hearing in the administrative tribunal, and there was available a full appellate review both on the law and the facts. *Rules* 1:2–20, 3:81–8, 3:81–9. The delay in the notice merely delayed the time for appeal. The definitive inquiry is whether plaintiff suffered prejudice by the failure of prompt notice of the allowance of the claims for benefits. Plaintiff's argument concedes as much. A finding of prejudice would be arbitrary. The claim of injury is theoretical and fanciful, utterly without foundation in fact. In the circumstances, disburdening plaintiff's account of these benefit payments would not be in accord with equity and right conscience. Due process is a principle of natural justice secured by Magna Charta and the successive constitutions of Nation and State; the substance of procedural due process is reasonable notice and opportunity to be heard, and the principle is not to be pressed

beyond its essential quality. In the case made here, the "bare possibility" of injury is not enough; there must be a showing of the likelihood of harm. *Gange Lumber Co. v. Rowley*, 326 *U. S.* 295, 66 *S. Ct.* 125, 90 *L. Ed.* 85 (1945); *Stockholders of the Peoples Banking Company of Smithsburg v. Sterling*, 300 *U. S.* 175, 57 *S. Ct.* 386, 81 *L. Ed.* 586 (1937). Unless approximately one-half of all the unemployment compensation benefits paid to plaintiff's detached employees during the years 1939, 1940 and 1941 were in violation of the act, as utterly devoid of merit, plaintiff would still be liable to the penalty rate of 3.6%.

It follows that if plaintiff's account be disburdened of the base-year charges of $3,112.61, and the unallocable items amounting to $1,750.76, the penalty rate of 3.6% stands unaltered; and so there is no occasion to consider the question of the validity of these charges.

█ Laches and the principle of estoppel *in pais* serve to bar the relief sought. Plaintiff knew that benefits were being paid to the separated employees, and it was well aware that, in making these payments, the Commission relied upon its failure to make known grounds of disqualification in response to the notices B-11. By plaintiff's conduct, the Commission was led to believe that the claimants were under no disqualification, and acted accordingly. Plaintiff intended that its inaction be so interpreted, for that was the fact. Plaintiff cannot now in equity and good conscience demand that, for want of the notice of the initial determination, it be disburdened of the benefits so paid. Compare *McSweeney v. Equitable Trust Co.*, 127 *N. J. L.* 299 (*E. & A.* 1941); appeal dismissed, 315 *U. S.* 785, 62 *S. Ct.* 805, 86 *L. Ed.* 1191 (1942); *Sun Dredging, &c., Company v. Ottens*, 85 *N. J. L.* 740 (*E. & A.* 1913). One may not be permitted to found a claim upon his own inequity. *R. H. Stearns Co. v. United States*, 291 *U. S.* 54, 54 *S. Ct.* 325, 78 *L. Ed.* 647 (1934). There was acquiescence by conduct in the administrative procedure which precludes its repudiation to serve plaintiff's present interest in a discriminatory contribution rate. The

cancellation of these charges to plaintiff's account "would not be responsive to the demands of justice and good conscience." *New Jersey Suburban Water Co. v. Harrison,* 122 *N. J. L.* 189 (*E. & A.* 1939).

The judgment of the Appellate Division is reversed and the determination of appellant's contribution rate by the Unemployment Compensation Commission is affirmed.

CASE, J. (dissenting). The judgment of the Appellate Division should, I believe, be affirmed throughout.

Benefits were charged to respondent's account by the Unemployment Compensation Commission for the years 1939 to 1941 inclusive in the amount of $93,000 where respondent was the last employer and of $3,800 where respondent was the employer in the base year. Those figures do not represent the judgment; they are simply important factors in determining plaintiff's rate of contribution to the general fund. It was conceded before the Appellate Division and is conceded before us that the item of $3,800 was improperly included. For accuracy in the record and for a precise disposition of the issues there should, therefore, be no disturbance of the striking of that item by the Appellate Division.

My vote to affirm the judgment in the Appellate Division in setting aside the remainder of the decision by the Commission is substantially upon the grounds stated in the opinion written by Judge Colie for the Appellate Division and reported in 9 *N. J. Super.* 101.

The statute as it then was (*R. S.* 43:21-6(*b*)) required that the executive director, by his designee, should determine whether a claim for benefits was valid and, if valid, when the payments should begin, the weekly amount payable and the maximum duration thereof, and should promptly notify the claimant and *any other interested party* of the decision and the reasons therefor. The Commission was not authorized to pay benefits until such notice had been given and the designated period for appeal had elapsed. The last employer was, of course, an interested party; none more so, because the

charge would be made against his account. The deputy originally recognized that obligation and maintained the practice of sending to the employer a notice on Form B-11 that the worker had made claim for benefits, that the records of the Commission indicated that the claimant was eligible for benefits in a named amount and that if the employer had any objections to payment of the claim he should check appropriate items in the form and return, and along with that notice, and in effect as a part thereof, the deputy sent a letter stating, *inter alia*, that "the purpose of the notice is to inform you that the Commission has declared the claimant to be eligible for benefits in the amount as indicated, and to allow you to present to the Commission any information in your possession which would make the claimant ineligible for benefits." The information thus given measurably complied with the statute; it notified the employer that the Commission had considered and granted the claim in the amount stated on Form B-11. The importance of that information lay in the fact that the claim could have been invalidated by incidents which occurred after the worker had left the employer, about which the employer would have no information but upon which it was the deputy's duty to find the facts and so determine the validity of the claim. Such incidents, for instance, could be the claimant's availability for work, pregnancy if a woman, the claimant's removal from the labor market, refusal to take a comparable job, receipt of old age pension, conditions which could depend upon facts wholly foreign to, or subsequent to, the employer's record. That the employer had no adverse information to communicate did not signify that there were no disentitling facts or that the employer was not interested in being notified of the decision. I find no concession by the employer that the benefits in question were valid and properly allowed; the concession was that the employer's record did not disclose invalidation. The Commission could not either by rule or regulation, or by a procedure adopted by its officers and employees, nullify a statutory requirement; it could not

place upon an employer the burden of doing that which the statute imposed upon the Commission. And it is not for us to hold that the employer was obliged, before receiving notice of the decision, to make such inquiry into facts outside his knowledge as would· enable him to determine, in advance, what his course would be with respect to an appeal.

For some reason the office changed Form B-11 so that it no longer contained the amount of benefits for which the worker was eligible and discontinued sending the letter or any substitute form of notification that the claim had been allowed. Indeed there is no satisfying proof that the office followed the practice of making a determination of validity unless the issue of a compensation check is, *ipso facto*, to be accepted as such; and even notice of the payment of the check was not given the employer. All, then, that the employer knew was that a claim had been presented; it was left in complete ignorance of the finding thereon. I do not consider notice of successive weekly payments so important as an initial notice that the claim was determined to be valid. The omission was clearly in violation of the statute, and that which was omitted was, in my opinion, a necessary preliminary to a charge against the employer's account for the purpose of fixing the employer's rate of contribution to the fund. The workers to whom unemployment benefits were paid are not concerned with this proceeding.

That the requirement is considered vital by the Legislature is apparent from the continued direction in even more positive terms, as by *ch.* 308, *P. L.* 1945, in amending the paragraph designated above, "The deputy shall promptly notify the claimant; the most recent employing unit and all employers in the base year of the decision and the reasons therefor," and by *ch.* 167, *P. L.* 1950 (*R. S.* 43:21-6 (*b*) (*2*)), "Whenever a determination of eligibility shall be made with respect to the first·week of the benefit year for which benefits are claimed, the claimant, the last employing unit and all employers in the base year shall be promptly notified of such determination." Provisions enacted subsequent to the period

in question do not, of course, vary the obligation of the Commission or of its officers, but the statutory citations indicate the importance which the Legislature attributes to the making of a determination and the giving of immediate notice thereof to the employer.

Inasmuch as nothing answering to a judicial or *quasi*-judicial determination was made, and no notice of validity or allowance was given, I can see nothing else than that the plaintiff was deprived of its right of appeal made, by the statute, to depend upon the making of the decision and the giving of notice thereof.

ACKERSON, J., concurs herein.

*For reversal*—Justices HEHER, OLIPHANT and BURLING—3.

*For affirmance*—Justices CASE and ACKERSON—2.