HORSMAN DOLLS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued July 10, 1950—Decided August 15, 1950.

Before Judges McGEEHAN, COLIE and EASTWOOD.

*Mr. Samuel Kaufman* argued the cause for appellant (*Messrs. Bilder, Bilder & Kaufman,* attorneys).

*Mr. Herman D. Ringle* argued the cause for respondent (*Mr. Charles A. Malloy,* attorney).

The opinion of the court was delivered by

COLIE, J. A. D. This matter is before the court as an appeal under *Rule* 3:81-8 from final decisions of the Unemployment Compensation Commission rendered April 1, 1948. *Certiorari* was allowed by a justice of the former Supreme Court prior to September 15, 1948.

Horsman Dolls, Inc., is a subject employer under the Unemployment Compensation Act. The act as originally passed

provided for contributions from subject employers at a uniform rate. Thereafter and at the times with which this litigation is concerned, the system of "experience or merit rates" was effective. The rate for a given employer was fixed by the Commission as follows: The employer contributions were totaled and the total benefits paid to employees deducted therefrom, the balance was the "reserve fund" credited to the employer's account. The total contributions made for the past three and five years were computed. These totals were divided by three and five respectively to get the average yearly contribution. The higher of the average yearly contribution was taken as the basis of determining the percentage that the "reserve fund" bore to it. That percentage was called the "reserve ratio" and dependent upon it, future contribution rate was fixed by the Commission. The rate varied from a high of 3.6% where employer contributions were less than the benefits charged to it, to a low of .9% where the reserve ratio equaled or exceeded 10%.

The decision under review fixed the contribution rate for the company at 3.6% for the years 1942 and 1943 and therefore the amount of benefits paid is important since that amount is a factor in determining "reserve ratio" and dependent upon that, the contribution rate.

Horsman Dolls, Inc., is the successor of Regal Doll Co. The change in name took place in 1939. The 1942 rate for Horsman Dolls was fixed at 2.7%. Thereafter the Commission recomputed the Horsman Dolls rate at 3.6%. The increased rate came about as a result of combining the Regal account for the period January 1, 1936-December 31, 1939, and the Horsman account for the period January 1, 1940-December 31, 1941. When Horsman Dolls was notified of the 3.6% contribution rate it filed a petition for hearing and as a result of information obtained at the hearing and in a memorandum of the Commission dated October 27, 1943, learned that the charges against its account, as most recent employer, were $93,266.16 of which $91,094.77 arose from benefits charged against Regal.

■ *R. S.* 43 :21–6 (b), at the time with which we are dealing, provided that a deputy should examine a claim filed for benefits, find the facts, determine the validity of the claim and, if valid, the week when payments commence, the amount payable and the duration of the payments, and then provided that "The deputy shall promptly notify the claimant and any other interested party of the decision and the reasons therefor." The Commission, presumably acting in conformity to the above provision, originally sent to the most recent employer a form B-11 entitled "Notice to Employer of Benefit Allowance," and an informational letter. The form advised the most recent employer of the claim, that the records indicated the claimant to be eligible for benefits in an amount specified in the form and that the addressee was the most recent employer. The letter advised the purpose of the form and the mathematical formula used to determine the charge against the employer. In May, 1939, a new B-11 was prepared, designated "Notice to Employer of Claim for Benefits." The use of the informational letter was discontinued in May, 1939. The revised form B-11 set forth that the worker stated his last employment to be with the addressee and that he had filed a claim and that the wage records in the office of the Commission indicated him to be eligible. The revised B-11 did not advise the employer that an allowance had been made or the amount of such allowance, and was sent only to the most recent employer and not to the employer or employers in the base or prior year. The revised B-11 did not constitute notice of the decision of the deputy and plainly does not comply with the statutory requirement.

■ When the Commission in May, 1939, ceased sending the informational letter and the original B-11 which gave notice of the allowance of the benefit, the employer no longer received the notice required by the statute. The revised B-11, in the absence of an explanatory letter, gave the employer notice only that a claim had been made. The employer is never affected by the mere making of a claim. The statute requires notice to the employer that an allowance had been

made. It is the making of an allowance, not the filing of a claim that affects the employer's rate.

In its brief the Commission argues that Horsman Dolls cannot challenge the procedure followed by the deputy because of its failure to comply with Regulation 20.02 which we quote below:

"20.02. Separation Notices Required Under Conditions Which May Disqualify:

"(a) Whenever a worker is separated from his employment (permanently or for an indefinite period or for an expected duration of seven or more days) under conditions which may disqualify such worker from benefits pursuant to the provisions of Section 5 of the Law, his employer shall within twenty-four hours after such separation deliver to such worker or mail to his last known address, if delivery is impossible or impracticable, a separation notice on such form as may be prescribed by the Commission. Such notice shall set forth: (1) the worker's full name; (2) his social security account number; (3) the last day on which he was employed; (4) a brief statement of the reason for the separation; (5) such other information as is required by such form. The employer shall immediately send a copy of such separation notice to the office of the Commission at Trenton.

"(b) Upon request by the Commission for any information with respect to the separation of any worker separated from his service for an employer or employing unit, such employer or employing unit shall, within forty-eight hours following the receipt of such request, furnish the Commission with the information requested. Any employer who fails either to furnish the separation notice referred to in Regulation 20.02 (a) to a worker separated from his employment and to the office of the Commission at Trenton, or to indicate thereon that such worker may be disqualified for benefits under any provision of Section 5 of the Law, or to furnish any other information requested by this Commission, shall be presumed to have admitted that such worker is not disqualified under any of the provisions of Section 5 of the Law."

The statute requires the deputy promptly to notify an interested party of the decision and we hold that the failure of Horsman Dolls, Inc., to give the notice of separation called for by the regulation does not excuse the failure of the Commission to perform its statutory duty. The Commission argues that the "decision" required by the statute was made when the first check in payment of benefits was sent to the employee,

*i. e.,* that the check was "tantamount to a decision." Even accepting this argument, which we do not do, it still would not be notice to the employer because the employer never received notice that the check had gone out. The effect of the regulation is to put the burden of proof on the employer when the employer questions a decision or allowance, that is to say, it creates a presumption which the employer is called upon to rebut if he can. If the original B-11 and the informational letter had gone out or if the statute had been complied with, then the employer, if he wished to dispute the amount of the award, would be faced with the burden of proving the facts upon which he would depend to attack the amount or the granting of the award. That is the extent of the effectiveness of the regulation and it cannot be tortured into doing away with the statutory requirement of the notice of allowance.

The decisions under appeal are reversed.