# Babb et al. v. Bullitt et al.

May 6, 1949.

Clayton Smoot for appellants.

Hubert T. Willis and Bullitt & Middleton for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

The question is whether or not, under the provisions of the Unemployment Compensation Act, KRS 341.010 et seq., a claimant may be separated from or may voluntarily leave employment, without good cause, accept employment elsewhere, and force payment out of the reserve account of the previous employer without giving to that previous employer the right to protest such payment.

Claimant was employed by appellees from May 26, 1944, to February 2, 1945. She left that employment which appellees claim to have been voluntarily and without good cause. She secured other employment immediately thereafter and worked until November 2, 1945. Her last employer, in making reduction of force, discharged her. She immediately registered for work with

the Employment Service and filed a claim for benefits on November 5, 1945. Notice of her claim for benefits was sent to appellees as well as to her most recent employer. Her most recent employer made no protest but appellees, previous employers, filed a protest. Benefits were awarded on the ground that the claimant was separated from her last employment through no fault of her own and that the alleged voluntary leaving of her previous employment with the appellees furnished no basis for disqualification, since KRS 341.370 imposes a disqualification for a voluntary leaving of work only with respect to claimant's "most recent suitable work." In accordance with this view and the provisions of the statute for proportionate charging, the Employment Compensation Commission charged to the reserve account of appellees 59% of the claimant's benefits and 41% to that of the employer who had separated her.

Appeal was then made from this determination and was heard by Referee, who found that the claimant was separated from her most recent work through no fault of her own and was not subject to any disqualification and that "none of the evidence concerning the claimant's separation from the employ of the appellees is material," since the statutes provide only for disqualification for voluntary leaving the claimant's "most recent suitable work."

Appellees then appealed this decision of the Referee to the Kentucky Unemployment Compensation Commission, which affirmed the Referee's finding.

Appellees then appealed to the Jefferson Circuit Court, contending that the phrase "most recent" in the disqualification provisions should be deleted from the statute by judicial condemnation. The Commission demurred, and the court held the Kentucky statute unconstitutional insofar as it uses the phrase "most recent" in relation to the word work, so as to permit only an employee's most recent employer to protest a claim for benefits or to invoke penalties or disqualifications against an employee, and as applied to one who is not the most recent employer when a part of the benefits payable would be charged to the reserve account of such previous employer.

From that decision the Kentucky Unemployment Compensation Commission prosecutes this appeal.

In explaining its order below, the court stated:

"However, Kentucky is one of some four or five states which in sections similar to that mentioned above in effect prevents any employer, even though benefits may be charged against him by reason of a claim, from protesting the payment of such a claim out of his reserve account and affords no opportunity for any notice or hearing with respect to such a claim, except to the most recent employer, and in connection with an employee's most recent work.

"This Act, read and construed literally, permits an employee who has voluntarily quit his job or who has been discharged for theft or other misconduct, by the simple expedient of taking another job for a week or two, to force the employer whose job he quit, or by whom he was fired, to pay the full benefits of the Act to the employee,—to pay, that is, by having the employer's reserve account charged with the amount of such benefits.

"In such an instance, the taking of the employer's money has no reasonable or any relationship to the public weal or to the general welfare, and is in fact and effect the taking of money of one private individual by the legislature under the guise of a tax and transferring it to another without compensation. Such legislation to such extent is unconstitutional and invalid."

Appellants insist that the court erred in its statement of the effect of the Kentucky Unemployment Compensation Act. It is insisted that the Kentucky Unemployment Compensation Law as enacted is reasonable and valid in conditioning benefits upon the proximate cause of the claimant's unemployment rather than upon the circumstances of a previous change of employment, and that the effect of the provisions is clearly not to compensate for voluntary unemployment but to test the voluntary or involunary character of the unemployment by the proximate cause thereof rather than by some remote and conjectural cause.

It is contended that, insofar as this record shows the claimant had no more reason to expect unemploy-

ment to result from her most recent employer than from the previous one; that she changed her work in good faith; and that the proximate cause of her unemployment was not her change of employers. She was within her rights after being separated from her employment to file claim for benefits with the Commission. Notice was given to appellees as well as her most recent employer. As stated above, appellees protested.

Appellants in brief insist further that appellees not only had notice but that they were permitted to appeal to the Referee and given a hearing; that they were given another hearing by the Commission, and thereby had full and repeated opportunity to show any basis for disqualification under the provis'ons of the Act. However, we cannot overlook the Referee's decision, which was affirmed by the Commission, wherein it was held: "An adjusted determination was issued on December 5, 1945, hold'ng that the appellant's protest could not be considered as a basis for imposing a disqualification as they were not the claimant's most recent employer."

In the order upholding the Referee the Unemployment Compensation Commission used these words: "Under the provisions of the Kentucky Unemployment Insurance Law penalt'es cannot be imposed for quitting a job other than the most recent employment."

KRS 341.370, as of the time this action was instituted, provides:

"(1) A worker shall be required to serve an additional waiting period of not less than one nor more than sixteen weeks of unemployment and the maximum amount of benefits payable to h'm shall be reduced by not less than one nor more than sixteen times the benefit rate if, according to the circumstances of each case, the commission finds that:

"(a) Subsequent to his most recent work, he has failed without good cause either to apply for available, suitable work when so directed by the employment office or the comm'ssion, or to accept suitable work when offered him, or to return to his customary self-employment when so directed by the commission;

"(b) He has knowingly made a fa'se statement to establish his right to or the amount of his benefits;

"(c) He has left his most recent suitable work voluntarily without good cause; or

"(d) He has been discharged for misconduct connected with his most recent work, but legitimate activity in connection with labor organizations or failure to join a company union shall not be construed as misconduct.

"(2) No worker shall be required to serve additional waiting periods nor shall benefits be reduced under paragraph (c) or (d) of subsection (1) of this section unless the employer, within a reasonable time as prescribed by commission regulation, notifies the commission and the worker in writing of the alleged voluntary quitting or the discharge for misconduct.

"(3) As used in this section, 'most recent' work shall be construed as that work which occurred after the first day of the worker's base period or base year and which last preceded the week of unemployment with respect to which benefits are claimed; except that, if the commission finds that the work last preceding such week of unemployment was intermittent or temporary in nature, most recent work may be construed as that work last preceding such intermittent or temporary work."

The Act was amended in 1948. By implication appellants in their reply brief intimate the recent amendment has removed the evil of which appellees complain. However, that question is not before us and we are not here concerned with any question arising under the Act as amended.

The above section determines under what conditions an unemployed person is entitled to benefits.

Appellees insist they are not concerned with the constitutionality of the Unemployment Compensation Act in general but are seriously concerned with that feature of the Act which undertakes to force a previous employer to pay benefits under the Act without an opportunity to be heard regarding any misconduct or improper acts of the employee while so employed by the previous employer, or to present any facts as a basis for imposing a disqualification.

Appellees complaint is directed specifically at the words "most recent work." The Act and the interpre-

tation thereof by the Unemployment Commission makes eligibility for benefits depend entirely upon circumstances under which the employee left his "most recent work" irrespective of the circumstances under which he left his next previous employment, even though a substantial part of the benefits paid may be charged to the previous employer's reserve account. If, according to the statute above, the imposition of a disqualification can only be made where the claimant voluntarily left the most recent suitable work without good cause, then the Referee is correct in his decision that "None of the evidence concerning the claimant's separation from the employ of the appellant is material in reaching a decision in this case."

It is this part that appellees insist is unconstitutional in that it invalidates the fundamental constitutional right to notice, protest, and hearing.

The law provides that each employer contribute to a reserve account, which is managed by the Commission. This account, to which the employer alone contributes, must be maintained at a certain level. Individuals who were in his employ alone withdraw from this account. Withdrawals lower the level of that account and the level can only be maintained by contributions by the employer. When withdrawals are made the employer is affected to the extent of those withdrawals. In following the letter of the law, as the Commission did, the previous employer was not entitled to a hearing. Only the most recent employer was entitled to such hearing. In limiting to the most recent employer permission to present facts showing disqualification the previous employer is thereby deprived of the right to protest, even though benefit payments are to be charged to his account.

Thus we see if limited to protest by the most recent employer, unfaithfulness and misconduct which may have occurred while working for the previous employer cannot be considered. The previous employer is then denied an opportunity to be heard and thereby deprived of the privilege of defending and protecting his rights relative to such unfaithfulness and misconduct.

In Railroad Retirement Board v. Alton Railroad

Co., 295 U. S. 330, 55 S. Ct. 758, 762, 79 L. Ed. 1468, it was said: "It is arbitrary in the last degree to place upon the carriers the burden of gratuities to thousands who have been unfaithful and for that cause have been separated from the service, or who have elected to pursue some other calling, or who have retired from the business, or have been for other reasons lawfully dismissed."

It is insisted that a strict compliance with the law as enacted would permit the taking of property, wilfully or capriciously, from one citizen and the bestowing of it on another without a right to be heard.

Notice and hearing, which is the very essence of due process, means an opportunity to present objections before a tribunal authorized to give effect to those objections. The "recent employer" and "most recent work" phases of the law make it impossible to give effect to the objections. While it is recognized that law must be adapted to new and changing conditions of society and should not be hampered by a narrow interpretation of due process, yet we cannot overlook the fact that any provision adapted to meet the changing conditions of society should not involve an infringement of a fundamental right. While we recognize the principle that the state, acting in its sovereign capacity, acts for the good of the whole and that private rights must yield to this paramount object, yet there is a vast constitutional distinction between a general law providing for a general tax falling in the same way, and the same amount, upon the whole public or upon a proper section thereof, and a law which provides that a particular employee may take from a particular employer funds, without a right of protest on the part of that employer, even though the employee were guilty of gross misconduct while in the employment of that particular employer.

Appellants insist that payment of Unemployment Compensation without regard to the responsibility of the employer for causing the unemployment, is a valid expenditure for public purpose, which has been established by the United States Supreme Court and all states where the matter has been tested. We insist again that this is not the question here.

A great deal of appellants' exhaustive and well written brief is devoted to the question of constitutionality in general of the various Unemployment Compensation Acts. We are fully cognizant of the fact that the consitutionality in general of these Acts has been well established by numerous decisions of both the State and Federal Courts. See Annotations in 100 A. L. R. 697; 106 A. L. R. 243; 108 A. L. R. 613; 109 A. L. R. 1346; 118 A. L. R. 1220, and 121 A. L. R. 1002.

Insofar as our research has taken us, the question presented here has never been discussed or determined in any of the cases dealing with the constitutionality of the various Unemployment Compensation Acts.

As suggested in appellees' brief, it may not be necessary to hold that the words "most recent" are invalid in the general use but merely hold that they are unauthorized only insofar as it would have the effect of depriving prior employers, whose reserve accounts would be affected by the payment of claims, of opportunity for notice, hearing or protest. It is not only possible but quite probable that in a great percentage of cases the most recent employer would be the only one affected, in which case no difficulty would arise because of the Act. This, we think, would be a strained interpretation of the Act, especially so in the face of the very clearly and positively defined terms of "most recent employer" and "base year."

Appellants condemn as highly imaginative the statement of appellees that under the Act an employee could be guilty of the grossest misconduct, theft, or other highly improper acts, be fired, obtain employment elsewhere, be discharged from the most recent employer without fault, file claim and force the previous employer to pay benefits under the Act, and that without even a hearing in the matter.

Appellants insist that nothing of the kind is present in the instant case and that such statement assumes the existence of something that does not exist. But the fact remains that all that appellees claim in that statement is exactly what could be done. The character of the enactment must be ultimately determined by what may be done under it. It has been well said: "The constitu-

tional validity of law is to be tested not by what has been done under it, but by what may by its authority be done."

Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289. See also Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 20 S. Ct. 620, 44 L. Ed. 747.

We are not here undertaking to register any emotional resistance to or express any disagreement with the Act generally. But we do say that if employers generally are so related to the unemployment problem that they can be required by a moderate tax to pay into a fund to be administered for the benefit of the unemployed, that it necessarily follows that they are not so unrelated to the problem as to permit an indiscriminate payment of benefits out of the reserve solely created and maintained by that employer, without any right to protest or be heard. The elimination of the words, as adjudged by the court below, does not affect the Act generally but leaves open the way for procedure pursuant to KRS 341.410 for notice to interested parties with a right to be heard.

We conclude, therefore, that the court properly disposed of the matter.

Wherefore, the judgment is affirmed.