**TEXAS EMPLOYMENT COMMISSION et al. v. TODD SHIPYARDS CORP.**

No. 10114.

Court of Civil Appeals of Texas. Austin.
March 25, 1953.

Rehearing Denied April 29, 1953.

Price Daniel, Atty. Gen., Lee G. Williams, Asst. Atty. Gen., and C. K. Richards, Asst. Atty. Gen., for appellant.

Liddell, Austin, Dawson & Huggins; Dwight H. Austin and Charles R. Vickery, Jr., all of Houston, Black & Stayton by John W. Stayton, Austin, for appellee.

HUGHES, Justice.

Todd Shipyards Corporation, appellee, filed this suit July 19, 1951, against the Texas Employment Commission,[1] its members, the Treasurer and Attorney General of the State of Texas.

Todd, alleging itself to be an "employer" and "employing unit" within the meaning of and subject to taxation under the provisions of the Texas Unemployment Compensation Act[2] since "more than three years next preceding December 31, 1947, and at all times subsequent thereto" sued for the recovery of $106,260.55 paid as unemployment taxes or contributions during the years 1948 to 1951, inclusive, and for incidental relief.

Trial was nonjury and resulted in a judgment for appellee against the Commission and the members thereof in the sum of $63,837.22 for taxes "illegally exacted" for the years 1948, 1949 and 1950 and against the State Treasurer for the sum $42,423.33 for taxes "illegally exacted" for the year 1951 and paid under protest in accordance with the provisions of Art. 7057b, V.A.C.S., together with interest thereon as therein provided.

It was further decreed that the Commission and its members "delete and expunge from their records each and all of the illegal charges to plaintiff's benefit wage account tabulated on Exhibits 'A', 'B', 'C', 'D' and 'E' of plaintiff's Third Amended Original Petition."

Findings of fact or conclusions of law were not requested of nor filed by the trial judge.

Todd describes this suit as being a "purely statutory proceeding brought under the refund provisions of Art. 5221b-1 et seq. and under the protest statute, Art. 7057b." and states the basis of its claim and the question presented to be:

"This is a notice and hearing case. The question involved can be easily stated: May the Commission pay benefits to those claiming unemployment insurance, charge appellee's benefit wage account as the result of such payments, thereby increasing appellee's contribution or tax rate, and at the same time not only fail to notify appellee of the claims but affirmatively deny appellee the right to appear and be heard?"

Before particularizing appellee's complaint and without attempting a detailed analysis of Federal and State Employment

1. Arts. 5221b-8, 5221b-22c, Vernon's Ann. Civ.St.

2. Art. 5221b-1 et seq., Vernon's Ann.Civ.St.

Tax Acts it will, we believe, aid in the understanding of this opinion for us to briefly recite the history and salient features of these laws.

The Social Security Act of 1935, as amended, levied an annual excise tax upon every employer employing eight or more persons equal to 3% of all wages paid by the employer during the calendar year.[3]

The proceeds of this tax were paid into the Federal Treasury and were not dedicated for any special purpose.[4]

An employer was entitled to credit on this tax in any amount, not to exceed 90% thereof, paid by him into an unemployment fund maintained during the taxable year under the unemployment compensation law of a State which met the approval of the Federal Government.

Additional credits were also allowed employers for the difference between lower than maximum State rates, approved by Federal officials, and the rate of 2.7 (90% of the Federal tax) or the highest State tax, whichever rate is lower.[5]

Among the requirements exacted of States in order that their laws might meet Federal approval are the following:

(1) That all monies received by the States under its laws were to be immediately paid into the Federal Treasury except for "refunds of sums erroneously paid into such fund".[6]

(2) That all monies withdrawn from their accounts in the Federal Treasury by the States should be used "solely in the payment of unemployment compensation" with the same exceptions noted in (1) above.[7]

(3) That additional credit to the employer with respect to any reduced rate of contributions permitted by State law shall be allowed only if such reduced rate is permitted on the basis of the particular employer's experience with respect to unemployment or other factors bearing a direct relation to unemployment risk during not less than three consecutive years immediately preceding the computation date.[8]

The Federal Security Administration is required to certify to State laws and their enforcement annually and procedure is outlined in cases of noncertification.[9]

The persuasive effect of this Federal legislation was that since its adoption some forty-three States, including Texas, have passed employment tax and unemployment compensation laws. The remaining five States had previously enacted such laws.

The Texas Unemployment Compensation Act was passed in 1936 [10] and has been and currently is certified as being in compliance with Federal law. This Act provides a comprehensive system for the payment of unemployment insurance or compensation to the unemployed and for the collection of contributions from employers covered by the Act to maintain a fund with which to pay such benefits. The Act provides for an experience rating plan under which certain employers pay contributions at a lower rate than do other employers.

The contribution rate of an employer for a calendar year depends upon two factors: a factor known as the State experience factor and a factor referred to as the employer's benefit wage ratio. The employer's benefit wage ratio is a percentage arrived at by dividing the employer's benefit wages for the three year period immediately preceding the calendar year in question by the employer's total taxable payroll for the same three year period. This fraction is then referred to a table where, by reference to various State experience factors, the employer's contribution rate is determined.[11]

It follows that the contribution rate of an employer increases when the total of his

3. Secs. 1600 and 1607, Title 26 U.S.C.A.

4. Sec. 1605, Title 26 U.S.C.A.

5. Sec. 1601, Title 26 U.S.C.A.

6. Also excepted were refunds to Federal agencies and employees under Secs. 1603, 1606(b), Title 26 U.S.C.A.

7. Sec. 1603, Title 26 U.S.C.A.

8. Sec. 1602, Title 26 U.S.C.A.

9. Pars. (c) & (d), Sec. 1603, Title 26 U.S.C.A.

10. Chap. 482, General and Special Laws of the 44th Leg., 3rd C.S., Art. 5221b-1 et seq., V.A.C.S.

11. Art. 5221b-5, V.A.C.S.

benefit wages for the pertinent three year period increases.

The benefit wages charged against an employer, sometimes referred to as "charge backs" or as "benefit wage charges," result from the filing of successful claims for unemployment compensation, usually referred to as benefits by individuals who were at one time employed by said employer. For example, if A applies for benefits and is actually paid benefits for a full week, a benefit wage charge is made against all covered employers who paid A wages during his base period. The base period of an employee who becomes unemployed and claims benefits consists of the first four of the last five calendar quarters immediately preceding the quarter in which the former employee files a compensable claim for benefits. For example, if A files a valid claim for benefits in January, 1952, his base period comprises the last quarter of 1950 and the first three quarters of 1951. If covered employers X, Y and Z paid wages to A during this base period, the account of each employer is charged with benefit wages when the claim is paid.[12]

Consequently the more individuals who were at one time employed by a particular employer that are paid benefits, the greater the amount of benefit wage charges made against the account of such employer and the higher his contribution rate.

The Commission processes claims for unemployment benefits in substantially the following manner:

An individual desiring to claim unemployment compensation must register for work in a local office of the Commission. Immediately thereafter he may file a claim for unemployment compensation, the claim being known as an "initial claim." The Commission then investigates the claim, and the Commission, if it determines that the claim is valid, notifies the claimant that his claim for compensation has been approved for a certain amount per week, this notice being known as an "initial determination." The claimant must then wait one week, known as the "waiting period week," and if he remains unemployed and

eligible for benefits and desires payment of benefits, he must file another claim, known as a "continued claim." One week later the claimant, if still unemployed and eligible for benefits and still desirous of obtaining benefits, must file a second continued claim. This is the claimant's first compensable claim, i. e., the first claim for which he actually receives a payment of cash benefits. If the claimant continues unemployed and eligible for benefits and remains desirous of receiving benefits, he files further claims at weekly intervals.

The actual payment of cash benefits to the claimant in the manner described results in benefit wage charges against the account of every covered employer who paid wages to the claimant during his base period.

The Commission notifies the employer of what is transpiring in this manner:

When the claimant files his initial claim, a copy thereof is sent to the employer for whom the claimant states he last worked. This last employer is the only employer receiving a copy of the initial claim.

When the last employer receives a copy of the initial claim, he must, if he desires further notice of the proceeding, declare his interest in the claim by notifying the Commission of such interest. If he so declares his interest, a copy of the initial determination thereafter made is sent such last employer and such last employer only.

If the last employer of a claimant, upon receipt of a copy of an initial claim, considers the claimant not entitled to benefits, such employer has eight days within which to notify the Commission of his interest in the claim. If the employer notifies the Commission of his interest and the Commission determines the claimant is potentially entitled to benefits, such employer has twelve days from the date of the initial determination, of which he receives a copy, to appeal to an Appeal Tribunal of the Commission, where, at a stated time and place, an Appeals Examiner takes testimony. If either the claimant or the last employer is dissatisfied with the decision of the Appeals Tribunal, an appeal may be taken to the Commission itself within the ten-day period fol-

12. Arts. 5221b-5, 5221b-17, V.A.C.S.

724

lowing the decision. After the Commission has rendered its decision, either party has ten days within which to appeal to a court of competent jurisdiction.[13]

The only notice which the statute requires is found in the paragraph relating to an initial determination of an employee's claim for compensation.[14]

This paragraph, in part, reads:

"(b) Initial Determination: A representative designated by the Commission shall promptly examine the claim and, on the basis of the facts found by him, shall either determine whether or not such claim is valid, and if valid, the date on which benefits shall commence, the benefit amount payable and the maximum duration thereof, or shall refer such claim or any question involved therein to an appeal tribunal or to the Commission, which shall make its determinations with respect thereto in accordance with the procedure described in subsection (c) of this Section, except that in any case in which the payment or denial of benefits will be determined by the provisions of subsection 5(d) of this Act, the representative shall promptly transmit his full findings of fact with respect to that subsection to the Commission, which, on the basis of the evidence submitted and such additional evidence as it may require, shall affirm, modify, or set aside such findings of fact and transmit to the representative a decision upon the issues involved under that subsection. The representative shall promptly notify the claimant and any other interested party of the decision and the reasons therefor. Unless the claimant or any such interested party, within ten (10) calendar days after the delivery of such notification, or within twelve (12) calendar days after such notification was mailed to his last known address, files an appeal from such decision, such decision shall be final and benefits shall be paid or denied in accordance therewith."

The Commission, in a rule or regulation adopted by it, defines "interested party," within the meaning of the above statute, to "include the claimant and the last employing unit of the claimant."

In the administration of the statutory and rule provisions regarding notice it was the practice of the Commission to "exclude" all employers except the last.

■ We do not understand appellant to defend the commission's practiced definition of "interested party." That it is erroneous is patent. Each base period employer is potentially, similarly and specially interested in the outcome of an employee's claim for benefits under the Act.

This self evident conclusion is not, in our opinion, determinative of the appeal and we will, therefore, continue statement of the case and of the issues involved.

Appellee contends that out of a total of 1,808 benefit wage charges made against its account during the period from 1946 to 1950, inclusive, 1,474 of such charges were illegally made. These charges fall into three groups.

In group I, representing a total of 1,131 charges or 63% of the total charges, are those charges against appellee's account made as the result of claims for benefits of which appellee was given no notice.

In group II, composed of 255 charges or 14% of all charges, are those charges against appellee's account made as the result of claims for benefits where appellee was mailed a copy of the initial claim but was not mailed a copy of the initial determination.

In group III, representing 88 charges or 5% of the total number of charges, are those charges resulting from claims for benefits where appellee was mailed copies of both the initial claim and the initial determination. Appellee has not excepted to 334 charges or 18% of the total number of charges.

Notice of the filing of an initial claim sent by the Commission was in the following form:

13. Art. 5221b-4, V.A.C.S.

14. Art. 5221b-4(b), V.A.C.S.

TUCC 501 (REVISED)

## TEXAS UNEMPLOYMENT COMPENSATION COMMISSION

### INITIAL CLAIM FOR BENEFITS

**-3-**
**Last**
**Employing Unit**

(Employment Office)  (No.)  (Date)  (Claim No.)

I am registering for work at the Employment Office listed above; I am available for work; and I am able to work. This statement is filed as a claim for any Unemployment Compensation Benefits that I may have coming to me as the result of my past employment and my possible continued total or partial unemployment, under Section 3 (Benefits), Section 4 (Benefit Eligibility Conditions), Section 5 (Disqualification for Benefits), and Section 6 (Claims for Benefits) of the Texas Unemployment Compensation Act. I sign this statement with full knowledge that the Law provides a penalty of fine and imprisonment for false statements to obtain benefits.

Claimant's
Name

Mailing
Address

, TEXAS

Claim Prepared On

S. S. No.

Telephone No.

SEX:  MALE ☐  FEMALE ☐  RACE:  WHITE ☐  NEGRO ☐  OTHER ☐  AGE  Marital Status

The location of my last job was

My occupation was  My duties were

Occupation Code No.

My Last
Employing
Unit Was:

Whose Complete Mailing Address Is

I have received no wages in lieu of Notice of Separation, Except  $

For
(Indicate Period of Time)

No Disability Benefits under the Workmen's Compensation Law of any State or any similar law of the United States are now accruing to me, Except  $

For
(Indicate Period of Time)

I am receiving no Old Age Benefits under an Act of Congress or under an Act of the state, nor am I receiving any benefits from an Employer Pension Plan except

$

(Indicate Period of Time)

I am not engaged in self-employment, nor am I engaged in farming, nor am I enrolled as a student in any school, except

I was separated from the above employment, or placed on partial employment on
(Date)
for the reason shown below:—

**EXPLANATION OF SEPARATION**

☒  I was placed on a partial employment basis because

☐  I was laid off by my employer because

☐  I resigned because

☐  I was discharged by my employer because

☐  I ceased work as the result of a labor dispute

Remarks:

NOTICE TO EMPLOYING UNIT:

The above named individual has filed initial claim for benefits under Sections 3, 4, 5, and 6 of the Texas Unemployment Compensation Act and has listed you as his last employing unit.

If you wish to become an "interested party" pursuant to Regulation 107 or to contest the above claim or submit any information concerning this separation, please forward your statement in writing to the TEXAS UNEMPLOYMENT COMPENSATION COMMISSION, AUSTIN, TEXAS.

If you do not furnish such statement of interest or information regarding this claim to the Commission within eight (8) days following the day on which the initial claim was accepted, you will not be treated as an "interested party."

A STATEMENT OF INTEREST OR INFORMATION CONTESTING PAYMENT OF THIS CLAIM MAY NOT BE ACCEPTED UNLESS YOU FURNISH THE CLAIMANT'S NAME AND SOCIAL SECURITY ACCOUNT NUMBER. PLEASE MAKE SEPARATE STATEMENT OF INTEREST ON EACH CLAIM.

### TEXAS UNEMPLOYMENT COMPENSATION COMMISSION
### AUSTIN, TEXAS

726

☐
Notice of an initial determination of a claim sent by the Commission was in the following form:

## TEXAS UNEMPLOYMENT COMPENSATION COMMISSION—AUSTIN

TUCC 304 (REV. 5-45)          NOTICE OF DETERMINATION

| NAME OF CLAIMANT | | SOCIAL SECURITY NUMBER | | 3 LAST EMPLOYING UNIT |

| CLAIM DATE | SEX | CLAIM NUMBER | | OFFICE |

☐ Claim APPROVED for benefit year beginning ———— and ending ————

Maximum total benefits ............$———— Benefit amount for total unemployment $————
(1/13 of highest quarterly earnings in base period)
(The lesser of 1/5 of wage credits or
9 times benefit amount)

Less deductions:

Disqualification: ———— benefit periods $————

Benefits previously paid during benefit year $————

Total deductions ..........$———— Maximum number of periods benefit amount
Balance of benefits .................$———— for total unemployment may be drawn ————
You have been disqualified to ———— inclusive, because ————

☐ Claim DISAPPROVED for reason checked below:

☐ You did not have as much as $90.00 in wages reported for you in the base period by subject employers.

☐ No wages have been reported for you in base period by subject employers.

☐ Benefits have been exhausted for the benefit year ending ————

☐ ————

Name and
Address of
the Last
Employing
Unit in
Texas

Date Mailed

Examiner

IMPORTANT—YOU MAY APPEAL FROM THIS DETERMINATION—see reverse side    ☐

Wages reported by subject employers for the four calendar quarters in the base period from————
————to————

| List Page Number | Employer Account Number | EMPLOYER NAME | Qtr. | Year | Taxable Wages Reported | Wage Credits | 1/13 of Wage Credits | 1/5 of Wage Credits |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

## IMPORTANT

### APPEALS AND DISAGREEMENTS

You may appeal from or disagree with the determination shown on the opposite side. Such appeal or disagreement must be filed with a representative of the Commission or in writing with the Texas Unemployment Compensation Commission, Brown Building, Austin 19, Texas, within twelve (12) days after the determination is mailed. The "Date Mailed" is shown on the opposite side.

### EXPLANATION OF TERMS USED

"Benefit Year" is the fifty-two (52) consecutive week period beginning with the day on which the first valid claim for benefits is filed. For example, if a valid claim is filed on January 1, the benefit year begins on January 1 and ends on the following December 31.

"Valid Claim" means a claim filed for benefits by an unemployed individual who has received wages within his base period from employment by employers equal to not less than nine (9) times his benefit amount. For example, if Ninety ($90.00) Dollars or more have been reported for you in the base period by subject employers, your claim should be valid.

"Base Period" means the first four (4) out of the last five (5) completed calendar quarters immediately preceding the first day of an individual's benefit year.

| If You Filed Your Claim During the Months of: | Your Base Period Would Be: |
|---|---|
| January—March 1945 | October 1, 1943 to September 30, 1944 |
| April—June 1945 | January 1, 1944 to December 31, 1944 |
| July—September 1945 | April 1, 1944 to March 31, 1945 |
| October—December 1945 | July 1, 1944 to June 30, 1945 |

"Benefit Amount For Total Unemployment." The benefit amount is determined by taking one-thirteenth of the highest quarterly wages in your base period adjusted to the next higher multiple of One ($1.00) Dollar. The benefit amount cannot be more than Thirty-Six ($36.00) Dollars, nor less than Ten ($10.00) Dollars per benefit period.

"Maximum Total Benefits" is the lesser of: (1) nine times your benefit amount; (2) one-fifth of your wage credits in the base period. The maximum amount of wages, including remuneration other than cash, such as tips, room and board, laundry, etc., which may be used in the computation of benefits, is $1,620.00 in your base period. If an individual's benefit amount is Thirty-Two ($32.00) Dollars, nine times his benefit amount would be $288.00. If the wage credits in the base period equalled $1,620.00, one-fifth would be $324.00. The claimant would, therefore, be entitled to the lesser, which is $288.00. If the wage credits were $1,000.00, one-fifth would be $200.00 and the claimant would be entitled to this amount, which is less than $288.00.

"Benefit Period" means fourteen (14) consecutive days immediately preceding the effective date of a continued claim.

### GENERAL INFORMATION

Your first check will be mailed only after you have served any disqualification period shown and after you have filed at least one payable continued claim or if filing on an interstate basis serving a waiting period and filing two payable continued claims covering a benefit period. If you obtain part-time employment or are partially unemployed, you may be entitled to partial or part-total benefits. For example, you are considered partially unemployed if you are working less than your usual customary full-time hours for your regular employer. You are considered part-totally unemployed when you have been laid off by your regular employer and are working at odd jobs for others. For, example, if you earned Ten ($10.00) Dollars from partial or part-total employment during a benefit period and your benefit amount was Twenty ($20.00) Dollars, Four ($4.00) Dollars would be added to the Twenty ($20.00) Dollars, and the amount of your earnings would be deducted and a check for Fourteen ($14.00) Dollars would be sent you in payment for the period.

### PENALTIES

Section 16 (A) provides: "Whoever makes a false statement or representation, knowing it to be false, or knowingly fails to disclose a material fact, to obtain or increase any benefit or other payment under this Act, either for himself or for any other person, shall be punished by a fine of not less than Twenty ($20.00) Dollars, nor more than Fifty ($50.00) Dollars, or by imprisonment for not longer than Thirty (30) days, or by both such fine and imprisonment: and each such false statement or representation or failure to disclose a material fact shall constitute a separate offense."

PERSONS VIOLATING PROVISIONS OF SECTION 16 (A) WILL BE PROSECUTED TO THE FULLEST EXTENT OF THE LAW.

Each time you return to the Commission Office to file a continued claim be sure you correctly answer all questions asked on the continued claim. To do this, it is necessary for you to have with you the following information:

1. The amount of wages, if any, paid you in lieu of notice of separation.
2. The correct amount of Workmen's Compensation, Old Age Benefits, or any benefits from employers pension plans received by you during period covered by claim.
3. The correct amount of time you have worked and the exact amount of wages you have earned during period covered by the claim, including as well as cash, tips, room and board, laundry and other remuneration.

ALWAYS FURNISH YOUR SOCIAL SECURITY ACCOUNT NUMBER WHEN WRITING THIS COMMISSION

It also appears that the Commission at three-month intervals sent to all base period employers, including appellee, statements showing the names and social security numbers with specifications of the benefit wage charge to the employer's account. These statements were in the following form:

Texas Employment Commission
Austin 19, Texas
Statement of Employer's Benefit Wages

Retain for your files:

These benefit wages will be used in determining your tax rate for the next three (3) calendar years if you are eligible for an experience rate. 'Amount' of 'Benefit Wages' shown for any claimant is that part of his total earnings from you, during the four (4) consecutive quarters ending on the date shown, which entered into the computation of his benefits.

| Employer's Account Number | Date Charge Made | | Social Security Account Number of Claimant | Name of Claimant | Benefit Wages | | |
|---|---|---|---|---|---|---|---|
| | | | | | For Four (4) Consecutive Qrs. Ending | | Amount |
| | or | Year | | | Mo | Day | Year | |

*Upon trial of this case appellee did not plead, prove or offer to prove that any benefits paid to those persons named in its petition and upon which charges to its benefit account were based were not intrinsically meritorious.*

We quote from appellee's brief its explanation of this omission:

"Throughout their brief appellants refer to the admission of appellee's counsel that appellee could not prove and would not attempt to prove that each of the 1474 claims resulting in charges to its benefit wage account was illegally paid by the Commission. Appellee's counsel made such statement for the following reasons:

"(1) Since with respect to nearly all of the claims appellee received no notice at all, and since with respect to none of the claims did it receive adequate notice, the notice prescribed by the statute, appellee did not know and had no way of ascertaining the period of time involved with respect to each claim. Having no knowledge as to this, appellee did not attempt to prove that it could have offered a specific claimant suitable employment; nor did appellee try to prove that a specific claimant was for some reason ineligible to receive benefits.

"(2) Having no knowledge of the facts and having no means whereby it could acquire such knowledge, appellee was unable to prove that the last employer named by a specific claimant was fictitious; that in truth and in fact appellee was the last employer of such claimant and that the claimant was separated from such employment under conditions that disqualified him from receiving benefits."

Mr. C. H. Messer, an attorney for the Commission, testified as follows:

"Q Mr. Messer, did you check the Commission's records with respect to each one of the names which is carried in the exhibit attached to Plaintiff's Third Amended Original Petition? A Yes, sir.

"Q You did check the Commission's records? A Yes, sir; on each item.

"Q Do the Commission's records reflect that the decisions on those claims are regular on their face? A Yes, sir."

■ The record in this case is unusually large and the questions presented and fully briefed by the parties are numerous and complex. If we were compelled to pass upon all issues discussed by the parties we would be required to state the case at greater length. We have concluded, however, that appellee's case is fatally deficient by reason of its acknowledged inability to prove that any of its employees or former employees who received benefits under the Act were not entitled thereto. If we are correct in this conclusion then all other issues are immaterial. Under these circumstances we consider our statement adequate.

This case is not an appeal from a decision of the Commission allowing or rejecting an employee's claim for benefits which is allowed aggrieved parties under Secs. (h) and (i), Art. 5221b–4.

Nor is this case an appeal from a decision of the Commission with respect to an "employer's benefit wages" under the provisions of Art. 5221b–5 (c).

This *is* a case under the provisions of Art. 5221b–12(j) which read:

"(j) (1) Where any employing unit has made a payment to the Commission of contributions alleged to be due, and it is later determined that such contributions were not due, in whole or in part, the employing unit making such payment may make application to the Commission for an adjustment thereof in connection with contribution payments then due, or for a refund thereof because such adjustment cannot be made, and if the Commission shall determine that such contributions or penalty, or any portion thereof were erroneously collected, the Commission shall allow such employing unit to make an adjustment thereof without interest in connection with contribu-

tion payments then due by such employing unit, or, if such adjustment cannot be made, the Commission shall refund said amount without interest from the fund, provided that no application for adjustment or refund shall ever be considered by the Commission unless the same shall have been filed within four (4) years from the date on which such contributions or penalties would have become due, had such contributions been legally collectible by the Commission from such employing unit. For like cause, and within the same period, adjustment or refund without interest may be so made on the Commission's own initiative.

"(2) When an employing unit has made a payment to the Commission of contributions and/or penalties alleged to be due and has, within four (4) years from the date on which such contributions and/or penalties would have become due had such contributions and/or penalties been legally collectible by the Commission from such employing unit, made application to the Commission for a refund thereof and such application for refund has been denied by the Commission, such employing unit may within one (1) year after the denial of such application for refund commence an action in any Court of competent jurisdiction in Travis County, Texas, against the Commission for a refund of the contributions and/or penalties so paid to the Commission, the provisions of Article 7057 (b), Revised Civil Statutes of Texas of 1925, as amended, to the contrary notwithstanding. Such action shall be de novo; and such recovery, if any, shall be without interest."

■■ This case also purports to be an action under the protest statute, Art. 7057b. It is our opinion that this statute is inapplicable. The Unemployment Compensation statutes are special statutes which within themselves contain full and complete provisions for the recovery of contributions paid by an employer. The general rule is that the remedies provided by

such statutes are cumulative of existing remedies unless the remedies are incompatible or the latter statute implies a negation of the existing remedy. 1 Tex.Jur. p. 688, 39 Tex.Jur. p. 15.

We need not analyze the two statutes for differences to show incompatability because, in our opinion, the language used in section (j), supra, evidences an express legislative negation of the remedy provided in Art. 7057b.

In James v. Consolidated Steel Corporation, Tex.Civ.App.1946, 195 S.W.2d 955, (n. r. e.), this Court held that the protest statute could be utilized in a suit to recover contributions paid under the Unemployment Compensation Act. As there pointed out, Section (j), Art. 5221b–12, of the Act did not at that time provide a complete and adequate remedy. Apparently to meet this deficiency in the law the Legislature in 1947, Acts, 50th Leg. p. 766, amended this section of the Act to its present form. There is thus evidenced a clear legislative intention to make the remedy contained in the Act exclusive.

If, however, we are in error in holding the protest statute inapplicable here we are firm in our conviction that Section (j) will prevail over any inconsistent provision of the protest statute in suits of this character, and in view of the ultimate decision in this case we doubt if such holding is of much materiality.

The remedy afforded appellee under Section (j), supra, is predicated upon a showing that it had made contributions which "were not due." Appellee's failure in this regard should, it seems, dispose of this suit.

We will, however, pursue the matter further.

The relief sought by appellee in this suit is of an equitable nature. It seeks to avoid the effect of decisions of the Commission awarding compensation to its employees and ex-employees and it seeks to expunge charges made to its wage account. This relief is a prerequisite to granting its prayer for recovery of contributions paid as a result of those charges.

The decisions of the Commission which appellee, insofar as it is concerned, seeks to set aside were all made by the Commission within the scope of its statutory power. They were all regular in form and upon their faces valid.

Conceding such orders of the Commission to be void as to appellee for want of notice the law is, for reasons of public policy, that decisions of an administrative agency valid in form but void in fact (if within the true jurisdiction of the agency) are binding and effective for all purposes until vacated in a proper proceeding. Texas Steel Co. v. Fort Worth & D. C. Ry. Co., 120 Tex. 597, 40 S.W.2d 78; 1 Tex.Jur. 10-year Supp. pp. 114–16 and cases there cited. A proper proceeding here is under Section (j), supra, which places the burden on the claimant to show that the contributions were not due.

This statutory prerequisite is analogous to, consistent with and in recognition of the rule applying generally to court judgments which requires that in order to vacate in a direct proceeding a void judgment, valid in form, a meritorious defense to the original action must be pleaded and proved.

The authorities supporting this statement of the law are numerous. Tex.Jur., Vol. 25, Judgments, Secs. 220–221.

The parties rely upon cases from other jurisdictions construing unemployment compensation acts. Appellee cites Call v. Luten, 219 Ark. 640, 244 S.W.2d 130; Babb v. Bullitt, 310 Ky. 211, 220 S.W.2d 394; Bell-Brook Dairies v. Bryant, 35 Cal.2d 404, 218 P.2d 1; Juster Bros., Inc., v. Christgan, 214 Minn. 108, 7 N.W.2d 501.

The Commission is comforted by the decision in Horsman Dolls, Inc., v. Unemployment Compensation Commission, 7 N.J. 541, 82 A.2d 177.

Before discussing these authorities we wish to state that we are not informed concerning the statutory conditions of the respective states for recovery of contributions paid by an employer nor the attitude of the courts regarding relief from void judgments except as disclosed in the opinions themselves.

Call v. Luten was a suit brought by an employer to enjoin the unemployment authorities from charging his contribution experience account with $288 unemployment benefits paid a former employee. No contribution based on such charge had actually been paid. The employer alleged and proved such employee was disqualified to receive benefits and was granted the relief sought.

This case is illustrative of a proper remedy which has been available to appellee since 1946, when it first learned of the initial charges herein challenged and the manner in which they were determined.

Babb v. Bullitt was a proceeding to review the action of an unemployment commission awarding compensation to a former employee, chargeable in part to a former employer's reserve account. The Court states the matter in issue:

"The question is whether or not, under the provisions of the Unemployment Compensation Act, KRS 341.010 et seq., a claimant may be separated from or may voluntarily leave employment, *without good cause* [15] accept employment elsewhere, and force payment out of the reserve account of the previous employer without giving to that previous employer the right to protest such payment."

This case is not a "notice" case as will be seen from this statement of the case:

"Claimant was employed by appellees from May 26, 1944, to February 2, 1945. She left that employment which appellees claim to have been voluntarily and without good cause. She secured other employment immediately thereafter and worked until November 2, 1945. Her last employer, in making reduction of force, discharged her. She immediately registered for work with the Employment Service and filed a claim for benefits on November 5, 1945. *Notice of her claim for benefits was sent to appellees as well as to her most recent employer. Her most recent employer made no protest but ap-*

*pellees, previous employers, filed a protest.* [15] Benefits were awarded on the ground that the claimant was separated from her last employment through no fault of her own and that the alleged voluntary leaving of her previous employment with the appellees furnished no basis for disqualification, since KRS 341.370 imposes a disqualification for a voluntary leaving of work only with respect to claimant's 'most recent suitable work.'"

This case held that the statute restricting disqualification for voluntarily leaving work to claimant's "most recent suitable work," was invalid and struck the words "most recent" from the statute.

We fail to appreciate the force of the Babb case here. There was notice, appearance and full development of the facts regarding the claimant's disqualification. Here the situation is the reverse.

Bell-Brook Dairies v. Bryant directly supports appellee's position although the Court recognized that it was creating an exception to the general rule in California that "a taxpayer may not obtain a refund of taxes unless it appears that more taxes were exacted than in equity and good conscience should have been paid." [16]

Juster Bros., Inc. v. Christgan. There was no notice in this case because the employer failed to give notice of separation as to the employees involved. This fact, the administrative authorities held, deprived the employer of right to notice or to protest. The employer presented undisputed evidence to prove disqualification of the employees but those facts were either rejected or ignored by the unemployment authorities. Under these facts the Court held, and properly so we believe, that compensation paid disqualified employees should not be used to determine the employer's contribution rate.

Horsman Dolls, Inc., v. Unemployment Compensation Commission. In this case there was notice of the initial claim for benefits but no notice of the initial determination as required by the statute. In pro-

---

15. Italics added.

16. 218 P.2d 3.

testing the contribution rate based on claims allowed under these circumstances the employer did not prove or offer to prove that any of such claims were invalid.

The Court sustained the rate saying, in part:

"As we have seen, there is no suggestion that any of the allowances for benefits here involved were unlawfully made, or were excessive in amount, or covered an undue period. There was no loss of a substantial right.

"The disburdening of plaintiff's account of benefits thus lawfully paid would work serious detriment to the statutory policy of unemployment insurance without reparatory service to appellant. Administrative failures or deficiencies cannot be made to serve the interests of one whose substantial rights have not been thereby invaded. The statute does not say that, for the purpose of computing the employer's contribution rate, a failure of notice of the initial determination shall, in and of itself, work a disburdenment of the employer's account of the benefits lawfully paid; and the corollary is that the employer cannot invoke the omission save as may be needed to repair the injury done to him. He may not resort to the default for his unjust enrichment.

\* \* \* \* \* \*

"The cancellation of these charges to plaintiff's account 'would not be responsive to the demands of justice and good conscience.' New Jersey Suburban Water Co. v. Town of Harrison, 1939, 122 N.J.L. 189, 3 A.2d 623, 626 (E. & A.)." [7 N.J. 541, 82 A.2d 180.]

We consider this case to directly support appellant's veiws because while notice of the initial claim was given notice of the initial determination or decision, the only notice required by the New Jersey statute and our statute, was *not* given.

The question is: Should Texas follow the express decision in the New Jersey case and the apparently presumed prerequisite in the Arkansas and Kentucky cases and require pleading and proof that benefit payments were invalid or "not due" before lack of notice could be used as a shield against increased rates of contribution based on such benefits or should Texas follow California and create an exception to well settled legal principles?

Before deciding to pursue the former course which is consistent, in principle, with our own decisions regarding judgments void for want of notice, we carefully considered and took into account the following matters which do or which in reasonable probability could vitally affect the public interest with which this case is saturated:

1. Enactment of the Unemployment Compensation Act was required for the "public good and the general welfare of the citizens of this State" in order that hardships attending involuntary unemployment should be alleviated.[17]

2. If appellee recovers in this suit then all other employers in Texas similarly situated would be entitled to refunds and the Commission has stated that it would on its own initiative, as authorized under Art. 5221b–12(j)(1), make such refunds.

3. While no estimate is found in the record of the amount of these refunds it is obvious that they would be of such magnitude as to threaten depletion of the fund from which unemployment benefits are paid.

4. Employers who have taken credit on the federal tax for the amount paid the State would in view of such refunds be subject to have their tax liability reassessed by the Federal Government.

5. Employees who have received benefits under circumstances similar to those shown by this record would be liable for repayment of the funds received. Art. 5221b–14(d).

6. The Federal Government would be authorized to cancel previous and refuse further certification of the Texas law. Sec. 1603(c, d), Title 26 U.S.C.A.

7. The result of noncertification of the Texas law would result in lapse of additional credits allowed by the Federal Act

17. Acts 1936, 44th Leg., 3rd C.S. p. 1993.

based on employer's experience records for a period of at least three years. Sec. 1602, Title 26 U.S.C.A.

We have concluded that equity, good conscience and the general welfare of all our citizens and the special welfare of employers and employees would not be served if our decision were contrary to the one we make.

It is our opinion that the judgment of the trial court should be reversed and judgment rendered that appellee take nothing by its suit. It is so ordered.

Reversed and rendered.