TODD SHIPYARDS CORPORATION V.
TEXAS EMPLOYMENT COMMISSION ET AL

No. A-4219. Decided December 9, 1953.
Rehearing overruled March 10, 1954.
(264 S.W. 2d Series 709)

*Liddell, Austin, Dawson & Huggins, Dwight H. Austin* and *Charles R. Vickery, Jr.,* all of Houston, *Black & Stayton* and *John W. Stayton,* of Austin, for petitioners.

The Court of Civil Appeals erred in holding that the Commission's orders are valid in form and affirmatively show that petitioner was given no notice of the claims and that there was no evidence to support such findings. Lamesa Rural High School District v. Speck, 253 S.W. 2d 315; Kern Barber Supply Co. v. Freeze, 96 Texas 13, 74 S.W. 303; Texas Steel Co. v. Fort Worth & Denver Ry. Co., 120 Texas 597, 40 S.W. 2d 78.

*John Ben Shepperd,* Attorney General, *C. K. Richards,* Assistant Attorney General, for respondents.

On the proposition that the commission had jurisdiction of the orders complained of, Board of Firemen's Relief v. Marks, 150 Texas 433, 242 S.W. 2d 181; on the proposition that petitioner was afforded an opportunity to be heard, Texas Steel Co. v. Fort Worth & D.C. Ry. Co., 146 Texas 286, 206 S.W. 2d 235, and on the proposition that Petitioner was not deprived of due process of law, Greer v. Railroad Com. of Texas, 117 S.W. 2d 142, error dismissed.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Our petitioner, Todd Shipyards Corporation, alleging lack of notice to it in connection with determination and payment of over a thousand claims of its ex-employees for unemployment benefits, under the Texas Unemployment Compensation Act (Art. 5221b, Vernon's Tex. Civ. Stat. Ann.) had judgment as plaintiff in the trial court (sitting without a jury) for recovery of some $106,000 additional payroll taxes ("contributions") paid by it under said Act as a result of the benefit payments mentioned. The judgment ran in part against the defendants, Texas Employment Commission, and its individual members, and in part against the defendant State Treasurer, all of whom, with the defendant Attorney General of Texas, are respondents here, having successfully appealed to the Austin Court of Civil Appeals, which decreed that the petitioner take nothing. The opinion (257 S.W. 2d 720) gives a painstaking review of the relevant background, operation and detailed provisions of the Act, in

deference to which our following informal statement of the case is deemed adequate.

In the great majority of instances in which the benefit payments in question were made ("Class 1" hereinafter mentioned) the petitioner was not the last employer of the persons paid but had been their employer at one time within the "base period" (an arbitrary period of about a year defined in the Act) preceding the filing of each of their benefit claims and, as such base period employer, was (along with any other such employers) subject, and actually subjected, to a "charge" against its employment experience record on account of the benefit payments. A similar charge is required also as regards the last employer, if also a base period employer, and in some instances ("Class 2" and "Class 3" hereinafter mentioned) the petitioner was the object of such charges. The result of the foregoing charges was, under a somewhat complicated formula provided by the Act, an increase in the rate of the payroll taxes of the petitioner over the rate which it would otherwise have enjoyed. In other words, if for any reason the individuals who were paid unemployment benefits had not been so paid, the tax rate enjoyed by petitioner for the particular tax years in question (1948-51 inclusive) would have been lower, and the dollar amount of taxes paid by petitioner for those years correspondingly less, than was actually the case. And admittedly a base period employer, as well as a last employer, if adequately advised of a pending claim for benefits and if in a position to offer employment to the claimant or to demonstrate the invalidity of the claim on its merits, might legally have done one or the other and thus defeated the claim and avoided the corresponding increase in its tax rate. Prior to an amendment of the Act effective October 1, 1949 there was no provision whereby a base period employer might be exempted from the above-mentioned charge against his experience record while the employee should yet be properly paid benefits. The amendment (Acts, 51st. Leg., ch. 148, p. 282) included such a provision (now part of Art. 5221b-5, (c) (2) (a), Vernon's Tex. Civ. Stats. Ann.) whereby the employer, upon termination of the services of a particular employee under circumstances of a disqualifying nature (separation due to a statute or ordinance, arbitrary quitting or discharge for cause) might duly notify the Commission of the facts and thus forestall any subsequent charge against it as base period employer with respect to unemployment benefits thereafter paid such employee. We understand the petitioner to admit that a large number of the charges involved in this suit were subject to have been forestalled by

petitioner under the amendment, but that petitioner did not take the steps therein provided to forestall them.

Relevant to the case also is the procedure governing benefit claims. In brief it begins with the unemployed party registering himself for work and filing his "Initial Claim" at a local office of the Commission. The Commission then investigates and either rejects the claim or approves it, determining in the latter event (the Act at least appears to say that it shall so determine) "the date on which benefits shall commence, the benefit amount payable and the maximum duration thereof * * *." This decision is called the "Initial Determination" and is interlocutory but becomes final within about ten days unless set aside through an "appeal" of the claimant or "other interested party" back to the Commission (which in turn may be followed by an appeal to the courts). The claimant in no event receives any payment of benefits until some two weeks after the Initial Determination, and in this interval his claim (although initially and justly approved) may become invalid through offers of employment or other disqualifying developments, including failure to file certain additional claim papers. This procedure and, more importantly, the sole statutory *notice* requirement in connection with it, are indicated in Art. 5221b-4, of which paragraph (b) is quoted in part in the footnote.[1]

The quoted requirement of notice "to Claimant and any other interested party" relates to the Initial Determination, although the practice of the Commission, evidently was to notify the *last* employer of the claimant with respect also to the filing of the Initial Claim. As to base period employers, the Commission, by

---

[1] "(b) Initial Determination: A representative designated by the Commission shall promptly examine the claim and, on the basis of the facts found by him, shall either determine whether or not such claim is valid, and if valid, the date on which benefits shall commence, the benefit amount payable and the maximum duration thereof, or shall refer such claim or any question involved therein to an appeal tribunal or to the Commission, which shall make its determinations with respect thereto in accordance with the procedure described in subsection (c) of this Section, except that in any case in which the payment or denial of benefits will be determined by the provisions of subsection 5(d), of this Act, the representative shall promptly transmit his full findings of fact with respect to that subsection to the Commission, which, on the basis of the evidence submitted and such additional evidence as it may require, shall affirm, modify, or set aside such findings of fact and transmit to the representative a decision upon the issues involved under that subsection. The representative shall promptly notify the claimant and any other interested party of the decision and the reasons therefor. Unless the claimant or any such interested party, within ten (10) calendar days after the delivery of such notification, or within twelve (12) calendar days after such notification was mailed to his last known address, files an appeal from such decision, such decision shall be final and benefits shall be paid or denied in accordance therewith. * * *."

rule and actual practice, treated the quoted phrase as excluding them, and the only type of "notice" given them (it was also given to last employers) was a quarterly statement (of "Benefit Wages") indicating the charges made to their experience record together with the name, and social security number of the recipient of the corresponding benefits and other data supporting the charge (see 257 S.W. 2d at p. 728). Obviorsly by the time this statement arrived, the corresponding benefit claims were already established and paid and the stated charges made.

As previously indicated, the great bulk of the benefit payments made the basis of the trial court judgment, were the result of proceedings as to which the petitioner (being a base period employer) received nothing in the way of notice except the quarterly statement last above mentioned. This group is referred to as Class 1. The next largest group, referred to as Class 2, comprises proceedings as to which petitioner (as last employer) was notified to the extent of receiving a copy of the Initial Claim (but not the Initial Determination). The smallest, or Class 3, group consists of cases in which the petitioner (as last employer) received copies of both the Initial Claim and Initial Deterimnation. The form of the latter, however, (set out in 257 S.W. 2d at p. 726) and evidently also the action of the Commission purportedly reflected thereby, did not include any finding or determination corresponding to the statutory words "the date on which benefits shall commence" (see footnote 1, ante) as will be mentioned again hereinafter.

The theory of the petitioner's suit and the corresponding recovery allowed by the trial court was, as heretofore indicated, that the determination of the benefits resulting in the excess taxes paid was, as to petitioner, void on account of the absence or deficiency if the notice given it as above described. The suit is by way of court recourse from the refusal of the Commission to make the corresponding refund upon claim presented to it under Art. 5221b-12 (j) (2) and also a suit under the so-called Protest Statute (Art. 7057-b, Vernon's Tex. Civ. Stats. Ann.). The former provision imposes on the party claiming the refund the burden of showing the Commission that the taxes in question "were not due." Neither before the Commission nor in the trial court did the petitioner attempt to prove that the various particular benefit claims on which the payments in question rested were not meritorious, although it did not concede them to be meritorious, but rather to the contrary, offered proof to the effect that many of the employees in question had quit petitioner's service (though not necessarily their last employer's service)

without good cause or had been discharged for cause; that in a few particular instances they had falsified the facts about who was their last employer; and that petitioner, if duly notified, was in a position to have offered employment to a substantial number of people, with the inference that it would thus in all probability have offered reemployment to some of the benefit claimants and accordingly defeated their claims and the consequent charges against petitioner. It was on the failure of the petitioner to make more of a showing than it did against the merits of the particular benefit claims, that the Court of Civil Appeals rested its decision. The latter concedes, indeed asserts, that the practice of the Commission in excluding a base period employer from the phrase "other interested party" erroneously deprived the petitioner of notice to which the law entitled it. But the court, relying on Horsman Dolls, Inc. v. Unemployment Compensation Commission, 7 N.J. 541, 82 Atl. 2d 177, likened the suit to an attack on a judgment regular on its face, where the attack, although direct, fails to include a showing of meritorious defense to the cause of action. 257 S.W. 2d 720, 730-733.

The respondents would first support the judgment of the Court of Civil Appeals upon the ground that suits consequent upon rejection by the Commission of refund claims made under Art. 5221b-12 (j) (2) are governed by the substantial evidence rule, and petitioner having failed to show that the rejection was not supported by substantial evidence, the suit fails. As to this contention, it is enough to say that its major premise is invalid under our recent decision in Rowan Oil Company v. Texas Employment Commission 152 Texas 607, 263 S.W. 2d 140.

■ As to the basic thesis of the Court of Civil Appeals, we start with the aforementioned premise, that the Act required notice to the petitioner with respect to the Initial Determination. Certainly if any one other than the benefit "claimant" could be "interested," the ex-employers, whose tax ("contribution") rate depended on the result, were interested; and the additional word, "other," clearly implies that the benefit "claimant" was not the only party intended. The phrase in question makes no distinction between last employers and base period employers generally, and since the latter were also directly affected by the results of the proceedings, there appears to be no sound reason for the Commission's interpretation that only last employers were intended.

■ Thus, at least as regards the Class 1 cases, the Commission made its determinations, payments and charges against the petitioner, without having given the latter the notice required by

law. Its reasons for so proceeding, however practical, could not affect the legal rights of the petitioner. The quarterly statement above mentioned was not literally or substantially the notice required by law any more than a bill for ad valorem taxes due would be notice of a proceeding to raise the assessment on the property concerned. The result ordinarily to follow would be that, as to the petitioner, the charges to its account were invalid. Whether or not a statute omitting a requirement of notice to affected employers would have satisfied the constitutional provision for due process, the statute here required notice. And while it does not in words state that charges made without notice are void, such a consequence would not be far fetched, since the purpose of a notice provision is usually to enable the party notified to defend his interests before any decision has been taken affecting him. The contentions of the respondents sound largely in equity; that the petitioner, on receipt of the quarterly statements, could and should, even at that late date, have appealed to the Commission from the benefit allowances theretofore paid and consequent charges made as reflected in the statements; that, with respect to benefit claimants who ceased employment with petitioner after the 1949 amendment, petitioner could and should have avoided many charges by taking the steps provided in the amendment; and that, above all, petitioner should have proved that the benefit awards in each individual instance were without merit. This line of defense applies, of course, to all three classes of cases in question. It is not so much an argument that the statute cannot be reasonably interpreted as voiding the awards and charges as to petitioner. Indeed, respondents, as part of their thesis that petitioner should have treated the quarterly statements as "notice," say that petitioner, having received no previous notice, remained at liberty to "appeal" to the Commission, long after the payments and charges had actually been made, which is also to say that petitioner was not bound by what was decided and done at the time it was decided and done. The argument is rather that it would be inequitable to permit here a legal consequence which normally would prevail. In our view the Class 1 charges against petitioner were invalid, and petitioner was not equitably barred from asserting their invalidity with the consequences adjudged in this behalf by the trial court.

■ In the first place, the bars to setting aside the decisions of tribunals such as the Commission (in this case the charges made against petitioner's account) are lower than those with respect to the judgments of courts of record. City of Houston v. Kunze, 153 Texas 42, 262 S.W. 2d 947; Parker v. Fort Worth &

Denver City Railway Co., 84 Texas 333, 19 S.W. 518. Both cited cases denied significance to the recital of due service in a condemnation judgment on the theory that condemnation is a proceeding of a "* * * special tribunal, and it is incumbent on one seeking to show right under its decree to show that the court had required (sic) jurisdiction to render it. * * * This is the general rule as to proceedings of special tribunals. Mitchell v. Runkle, 25 Texas Supl., 132, 137; Freem. on Judg., 123." 84 Texas 333, 336, 19 S.W. 518, 519. Even to say generally that the orders of the Commission are presumptively valid would not be to say that, once they are shown to have been made without observing the requirements of the governing statute they yet enjoy the same relative immunity as judgments of courts. In Bell-Brook Dairies v. Bryant, 35 Cal. 2d 404, 218 P. 2d 1, a case which both the court below and we consider quite in point, the opinion takes the view that a mere showing by the employer of probable injury is sufficient as distinguished from proof that all the benefit determinations in question were non-meritorious. The court rejected the very argument based on failure of the employer to "appeal" to the Commission following receipt of the quarterly statements, saying, with evident truth, that sufficient injury appeared from the fact that at that late date it would have been impossible for the employer to have defeated the benefit claims bv the otherwise simple means of tendering employment to the claimants. It may be said also that in the instant case, the testimony for the Commission to the general effect that its proceedings had been reviewed by the witness and found by him to be "regular on their face" does not, and evidently was not intended to, create the impression that any formal or other orders existed containing recitals of due notice to the petitioner of the Initial Determination. In fact, considering the Commission's own rule aforementioned, it's records must be taken as showing that no such notice was given.

■ As to the 1949 Amendment, no doubt petitioner was imprudent in failing to take advantage of it to whatever extent the facts permitted. But there is nothing in it to suggest that this privilege of forestalling a subsequent charge to petitioner's experience record, where the particular employee ceased employment with petitioner under disqualifying circumstances, was intended to deprive petitioner of its right to prior notice of, and consequent opportunity to defeat, the same charges by other legal means, such as offering the employee reemployment or showing him to be not entitled to benefits for reasons other than the circumstances of his separation from the employment of petitioner. The amendment simply added an additional conces-

sion to the employer. His failure to take advantage of it in a particular case was no waiver of other and different rights he might have in the same case. If the legislature meant that a charge against a base period employer, even when made without due notice, could never be avoided except by the procedure specified on the amendment, it expressed itself in most round-about fashion.

We do not share the reliance of the learned court below on Horsman Dolls, Inc. v. Unemployment Compensation Commission, 7 N.J. 541, 82 Atl. 2d 177, (a decision incidentally, rendered over the dissent of two of the five judges concerned). Some of the expressions in the opinion do favor the respondents here, but the factual situation with respect to probable injury to the employer as the result of lack of notice was different from that in the instant case, and the decision falls short of holding that the refund claimant must affirmatively show the benefit claims in question to have been without merit in order to effectively attack the charges. With regard to the matter of probable injury, it was said not only that the employer admitted the benefit claims to be meritorious, but also that the evidence conclusively negatived the possibility of the employer offering the claimants reemployment. Furthermore, it appears that the employer (unlike the petitioner in the Class 1 cases before us) was given prompt notice of the filing of the benefit claims, the complaint being that it was not thereafter notified also of the initial and other determinations.

■ This brings us to particular consideration of the petitioner's rights with regard to the Class 2 charges (as to which it received notice of the Initial Claim, and those of Class 3 (as to which it received notice of both the Initial Claim and Initial Determination). As to both classes, the judgment of the Court of Civil Appeals must be sustained.

The petitioner's point as to Class 3 is that the notice of Initial Determination did not specify the date on which the benefit payments would commence, as the statute appears to have contemplated that it should, and that petitioner was prejudiced because, if compelled to take action in advance of certainty that the payment would actually be made (it might not be made, for example, if the claimant should meanwhile find employment) petitioner would be put to undue inconvenience and possible waste of time. As to Class 2 the same argument is made a fortiori, since the filing of a claim is not even an indication that the latter will be approved in the Initial Determination, and notice

of a mere claim is more clearly not the notice contemplated by the statute.

One obviously substantial difference between Classes 2 and 3 on the one hand and Class 1 on the other is that in both the former the notice was well in advance of actual payment of the claims instead of long after payment and resulting charges to petitioner's experience account. Conceding that in both classes something less than the statutory notice was given—something obviously true as to Class 2 but much less so as to Class 3—it was yet such in our opiniin that petitioner cannot claim probable prejudice therefrom. Petitioner was warned in ample time, and its prejudice could consist only of some additional trouble it would have to take in order to keep up with the claims and protect its interests, as compared to a case wherein it were notified of the Initial Determination, including specification of the day on which benefit payments would actually commence. This holding is not, as has been suggested that it might be, an "invitation" to the Commission hereafter to notify interested parties only of the filing (as distinguished from the Initial Determination) of benefit claims. It cannot be assumed that the Commission will disregard our statement as to what the law requires merely because in a particular instance we refuse the taxpayer relief in the way of a refund.

The effect of the foregoing is that the judgment of the Court of Civil Appeals should be reversed in so far as it concerns the petitioner's claim above referred to as Class 1, and that the judgment of the trial court allowing recovery of those claims, expunging the corresponding benefit wage charges against the petitioner and directing the State Treasurer to issue a refund warrant with interest (in so far as 1951 taxes embraced in the Class 1 claims are concerned) should be affirmed; whereas the judgment of the Court of Civil Appeals in so far as it denies petitioner recovery as to its claims described as Class 2 and Class 3 and refuses to expunge the corresponding benefit wage charges against the petitioner should be affirmed. It is so ordered.

Opinion delivered December 9, 1953.

Rehearing overruled March 10, 1954.